**Helene R. ORSI, Plaintiff,**

v.

**SUNSHINE ART STUDIOS, INC., William R. Robbins, Edward R. Robbins and Mary J. Robbins, Defendants.**

**Civ. A. No. 89–30038–MAP.**

United States District Court,
D. Massachusetts.

Feb. 2, 1995.

---

William J. Fennell, Joseph P. Dusel, Dusel, Murphy, Fennell, Liquori & Powers, Springfield, MA, and Alan Robert Baker, Baker & Fulco, Wethersfield, CT, for plaintiff.

John J. Egan, Egan, Flanagan & Cohen, P.C. and James F. Martin, Robinson, Donovan, Madden & Barry, Springfield, MA, for defendants.

## MEMORANDUM REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### (Docket No. 128)

PONSOR, District Judge.

### I. INTRODUCTION

The plaintiff, Helene Orsi, is a minority shareholder of Sunshine Art Studios, Inc. ("Sunshine" or "corporation"). In 1989 she brought this action seeking derivative and direct relief against the two majority shareholders, the Board of Directors and the corporation, to redress the alleged oppressive conduct of the majority shareholders. Sunshine, William R. Robbins, Edward R. Robbins, and Mary J. Robbins ("defendants") have moved for partial summary judgment on Count I, a claim that seeks direct relief against the individual defendants for the breach of their fiduciary duty. The defendants have also moved for summary judgment on paragraph 11 of plaintiff's complaint, a claim against William and Edward Robbins for self dealing and the diversion of a corporate opportunity.[1] For the reasons set forth below, the court will deny defendants' motion for partial summary judgment in its entirety.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter as law." Fed.R.Civ.P. 56(c). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although the court must view the record favorably to the nonmoving party, the nonmoving party must set forth "specific facts

---

1. Plaintiff has not set forth a separate count of diversion of a corporate opportunity, but instead somewhat vaguely suggests such a claim in paragraph 11 of the amended complaint. Moreover, it remains unclear whether plaintiff is seeking direct or derivative relief pursuant to this claim.

sufficient to demonstrate that every essential element of its claim or defense is at least trialworthy." *Catrone v. Thoroughbred Racing Association,* 929 F.2d 881, 884 (1st Cir. 1991). "If evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511. In order to defeat summary judgement, the nonmovant must successfully meet its "burden of placing at least one material fact into dispute after the moving party shows the absence of material fact." *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A "material" fact is one which is "susceptible of altering the outcome of the litigation." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992).

## III.  *FACTUAL AND PROCEDURAL BACKGROUND*

Helene Orsi, and her brothers, William and Edward Robbins ("the brothers") are currently the sole shareholders in Sunshine, each owning four shares of stock. The facts that give rise to this unfortunate intrafamilial dispute, as alleged by plaintiff, are as follows.

Each sibling acquired his or her shares in 1977 when their father, Ryland Robbins, disclaimed 44 shares from his parents' estate and gave four shares to each of his eleven children. At that time, William became president of Sunshine, and Edward became a corporate officer. Plaintiff claims that she and her other siblings were not informed that they owned 4 shares of stock until 1984, the year William and Edward first offered to purchase the siblings' shares. Meanwhile, Ryland Robbins still owned 165 additional shares of Sunshine stock.

In January of 1985, Sunshine redeemed Ryland Robbins' 165 shares, leaving the eleven children as sole shareholders. In February of the same year, the shareholders elected a new five-person Board of Directors. The Board consisted of the two defendant brothers and three spouses of the other sibling shareholders, one of whom was plaintiff's husband, Dennis Orsi.

In April of 1985, William and Edward Robbins asked the three other members of the corporation's Board to consent to the brothers' purchase of a building at 45 Warwick Street, Springfield, Massachusetts, from their mother, Jean Robbins. The outside directors refused to ratify the transaction until they received additional information concerning this purchase. Although the brothers did not provide the requested information to the Board and did not receive Board approval, William and Edward Robbins nevertheless personally purchased the property for $210,000. Plaintiff claims that this price is 50% less than the fair market value of $325,000 and that the brothers' personal purchase at a bargain price constituted a misappropriation of a corporate opportunity. The brothers did not record the deed until several months later, after they regained majority control of the board. The five-person board never met again after that April meeting.

The brothers claim that their mother specifically restricted the sale of the building to them personally, and expressly stated it was not to be sold to the corporation. There are no restrictions mentioned on the deed and, according to Helene Orsi, the brothers never mentioned any conditions or restrictions on the contemplated transaction during the Board meetings. After the brothers purchased the property, substantial renovations and improvements were made. Once the renovations were complete, the brothers charged the corporation $600,000 in rent for the entire building. Orsi avers that three of the four floors were not needed by Sunshine for its business operations. The corporation's name, not Edward and William Robbins' names, appears on the permit for the improvements.

Between the summer of 1985 and March of 1986, the defendant brothers solicited their siblings to sell their stock back to the corporation for $100,000 per share. By September of 1985, enough shareholders had tendered their stock to Sunshine to allow the brothers to effectively control the corporation. Thereafter, because they had obtained enough voting support, the brothers prevailed in a resolution to reduce the Board to three people.

Having reduced the size of the board, the brothers elected themselves and the defendant Mary Robbins as the sole directors.

By early 1986, all of the other sibling shareholders, except plaintiff, sold their stock for $100,000 per share. This left plaintiff as the only outside shareholder. The brothers have refused plaintiff's continued requests to review Sunshine's financial information and records, which Orsi feels is necessary to determine the value of her stock. Plaintiff claims that by June 30, 1986 her Sunshine stock had a value of $1.192 million per share. Orsi also claims that the $100,000 per share offer was never formally withdrawn. Defendants have never paid a dividend to Orsi.

Orsi asserts that the brothers' salaries have quadrupled since they gained control of the corporation. Prior to the fiscal year ending June 30, 1985, the brothers' combined annual compensation from the corporation averaged approximately $145,000 per year. After the brothers gained control of the company, they increased their compensation four fold, with a combined annual compensation of $586,000 plus another $83,000 from the profits of their wholly owned corporation, Sunshine Sales Club, Inc. The brothers have not yet disclosed their compensation for the past two fiscal years. In addition, Orsi claims that the brothers caused the corporation to pay $475,000 to their mother, Jean Robbins, in exchange for a minority interest in a real estate trust that did not enhance the value of the corporation.

In November of 1986, the plaintiff brought legal action in state court against her brothers to obtain the records of the corporation. Following a complete trial and judgment in her favor, the brothers provided plaintiff some information. According to Helen Orsi, to this day, the brothers have not turned over the financial statements and tax returns of the corporation.

## IV. DISCUSSION

### A. Count I: Freeze–Out Claim Against Individual Defendants

In Count I, plaintiff seeks direct relief against individual defendants William and Edward Robbins for breach of fiduciary duty owed to her as a shareholder in a close corporation. Plaintiff asserts that this breach was in the form of an alleged freeze-out by the defendants. Specifically, Orsi alleges that the record reveals the following: the brothers' diversion of corporate assets and opportunities to a related corporation owned by the brothers; the brothers' usurpation of a corporate opportunity when they purchased the 45 Warwick Street property; the corporation's payment of excess rent for the premises; the corporation's payment for the costs of renovations; the brothers' failure to pay dividends to the plaintiff, and the brothers' receipt of excessive compensation. Defendants seek summary judgment on Count I, asserting that the allegations underlying this count, if established, are merely claims on behalf of the corporation. According to defendants, direct relief—in the form of a monetary award to plaintiff—is not available for these sorts of claims.

In Massachusetts, the general rule is that where a right of recovery for a shareholder's wrongdoing belongs to a corporation, a claim for relief must be asserted in a derivative action and not as a direct action for breach of fiduciary duty. *Bessette v. Bessette*, 385 Mass. 806, 809–10, 434 N.E.2d 206 (1982). As the Appeals Court has stated, "where corporate recovery for misdeeds by a corporate fiduciary is available under traditional corporate law, and such recovery provides a just measure of relief to the complaining stockholder, resort to a direct, personal action against miscreant fiduciaries may not be available...." *Crowley v. Communications for Hosp., Inc.*, 30 Mass.App. 751, 765, 573 N.E.2d 996 (1991).

However, the rule of corporate recovery for wrongs to the corporation is not as inflexible as defendants portray. *Samia v. Central Oil Co.*, 339 Mass. 101, 123, 158 N.E.2d 469 (1959). The court in *Samia* recognized its obligation to award direct relief where it "more justly apportion[s] the burden of the recovery among the wrongdoers."[2] This notion was later affirmed in

---

2. In *Samia* the "just" result was achieved by

requiring the wrongdoers to return to the compa-

*Crowley,* where the court acknowledged that the measure of relief must be "just." *Crowley,* 30 Mass.App. at 765, 573 N.E.2d 996. Thus, in disputes among shareholders, courts have broad equity to remedy the wrong. *Richey v. Sullivan,* No. 91–1484, slip op. at 27 (Worcester Superior Court), citing *Zimmerman v. Bogoff,* 402 Mass. 650, 661, 524 N.E.2d 849 (1988).[3] The court may fashion a remedy designed to put the innocent majority shareholder as nearly as possible in the same position that he or she would have occupied had there been no wrongdoing. *Zimmerman,* 402 Mass. at 661, 524 N.E.2d 849.

Remedies should be tailored to the facts of each case. The case law makes it clear that the obligation of this court will be to fashion an equitable result, not to blindly apply rigid rules that limit the court's ability to adequately redress the "manifest unfairness" of an oppressed minority shareholder in a freeze-out. *Crowley,* 30 Mass.App. at 758–759, 573 N.E.2d 996. Of course, the existence of *any* unfairness to plaintiff is very much in dispute in this case. If unfairness is found, however, it may be futile to require the minority shareholder to sue on behalf of the corporation when the only other shareholders are the two individual defendants, because any recovery in a derivative suit would return the funds to the control of defendant brothers, rather than to the injured party.

In a large public corporation, the oppressed minority can sell her stock in order to extricate some of her invested capital. This market is not available for shares in a close corporation. The minority shareholders may be trapped in a disadvantaged situation. *Donahue v. Rodd Electrotype Compa-*

ny *of New England, Inc.,* 367 Mass. 578, 592, 328 N.E.2d 505 (1975); *see In re Seagroatt Floral Co.,* 78 N.Y.2d 439, 576 N.Y.S.2d 831, 583 N.E.2d 287 (1991) (recognizing that an ordered buy-out of stock at fair value is an appropriate remedy in a closely held corporation for the oppressive acts of the majority, when there is no ready market for the corporation's shares); *see also* Robert B. Thompson, *The Shareholder's Cause of Action for Oppression,* 48 Bus.Law 699, 737 (1993), citing AMERICAN LAW INSTITUTE'S PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(d) (proposed Final Draft 1992)[4]

To sum up, after a trial of the contested facts in this case, it may well be within the power of the court to grant direct relief to the plaintiff. Accordingly, summary judgement as to Count I will be denied.

**B.** *Usurpation of Corporate Opportunity*

Defendants also move for summary judgment on paragraph eleven of plaintiff's amended complaint. Essentially, in this paragraph plaintiff alleges that the individual defendants misappropriated a corporate opportunity by purchasing the building at 45 Warwick Street, and then engaged in self dealing when they caused the corporation to make the capital improvements. In addition, plaintiff also alleges that the brothers then leased the premises to the corporation at an excessive rent.

A director's fiduciary duties require that he be loyal to the corporation and that he not promote his own interests in a manner injurious to the corporation.[5] *Johnson v.*

ny all funds that they improperly withdrew, followed by the redistribution of the funds, after payment of fees, to all the stockholders.

**3.** In the *Richey* case, an undated slip opinion submitted by plaintiff, the court concluded that the appropriate remedy was to require, at the plaintiff's option, the redemption of the plaintiff's shares of the stock in the corporation by the individual defendant, valued at the · time of breach of fiduciary duty. *Richey* at p. 27.

**4.** The American Law Institute's Principles of Corporate Governance supports direct action in

some situations involving close corporations, including direct relief where there would be no harm to other shareholders or creditors. The official comments note that the rules for a derivative claim were "essentially intended to protect public corporations against strike suits." *Id.* § 7.01(d) cmt. Here, there is no likelihood of such suits.

**5.** The courts have held that due to the inherent danger to minority interests in a close corporation, stockholders in a closely held corporation owe one another substantially the same fiduciary duty that partners owe one another. This duty is

*Witkowski,* 30 Mass.App. 697, 705, 573 N.E.2d 513 (1991). In order to prove that a director breached a fiduciary duty by misappropriating a corporate opportunity, a plaintiff must establish that the director took advantage of a corporate opportunity for personal profit when the interest of the corporation called for protection. *Durfee v. Durfee & Canning, Inc.,* 323 Mass. 187, 199, 80 N.E.2d 522 (1948).

█ Defendants assert that because the corporation was expressly restricted from purchasing the building, there was, as a matter of law, no corporate opportunity to be usurped, and therefore no breach of fiduciary duty. The problem with this argument is that the issue of whether Jean Robbins restricted the sale of her property only to her sons, excluding the corporation, is clearly in dispute. Evidence supporting the plaintiff includes the absence of a restriction in the deed, and the fact that the brothers never mentioned any restriction to the Board when they were seeking consent to the transaction.

In addition, the fact that Sunshine is listed as the owner on the building permit application that was issued to Sunshine, and not the brothers, could lead a reasonable juror to conclude that the brothers improperly engaged in self dealing by causing the corporation to pay for the renovations on the building.

Finally, defendants submit that because plaintiff's expert has conceded that the rent charged was not excessive, there is no factual dispute on this point. It is true that plaintiff's expert does not believe that the rent paid by the corporation for the entire building was out of line with market rents. This opinion, however, was based on an original market value of $325,000 when it was purchased in 1985, and assumes that the substantial improvements were paid for by the owners. In short, the expert's opinion does not rule out plaintiff's claim of excessive rent.

In sum, viewing the facts in the light most favorable to the plaintiff, the court must conclude that genuine issues of material fact

remain as to whether defendants usurped a corporate opportunity or engaged in self-dealing. Therefore, summary judgment as to paragraph 11 will be denied. However, if plaintiff is intent on proceeding with a claim of misappropriation of a corporate opportunity or a claim of self-dealing, she should for clarity amend her complaint to include the same in a separate count.

## V. *CONCLUSION*

For the foregoing reasons this court hereby DENIES defendants' Motion for Partial Summary Judgment in its entirety.

one of utmost good faith and loyalty. *Donahue v. Rodd Electrotype Company of New england, Inc.,* 367 Mass. 578, 593, 328 N.E.2d 505 (1975);

*Wilkes v. Springside Nursing Home, Inc.,* 370 Mass. 842, 848, 353 N.E.2d 657 (1976).