George WESSIN, et al., Appellants (C5–98–28), Respondents (C3–98–30),

v.

ARCHIVES CORPORATION, Respondent (C5–98–28), Appellant (C3–98–30), John D. Jerome, et al., Respondents (C5–98–28), Appellants (C3–98–30).

Nos. C5–98–28, C3–98–30.

Court of Appeals of Minnesota.

July 14, 1998.

Review Granted Sept. 30, 1998.

David R. Marshall, Cynthia Jokela, Steven J. Quam, Fredrikson & Byron, P.A., Minneapolis, for George Wessin, et al.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Archives Corp.

Vincent D. Louwagie, Fruth & Anthony, Minneapolis, for John Jerome, et al.

Considered and decided by LANSING, P.J., and KLAPHAKE and NORTON, * JJ.

## OPINION

LANSING, Judge.

Minority shareholders in a closely held corporation sued the corporation, the majority shareholder, and a corporate officer for corporate misconduct. Ruling on a defense motion, the district court entered judgment on the pleadings, dismissed the complaint without prejudice, and denied the minority shareholders' motion to amend the pleadings and vacate the judgment. We reverse the judgment of dismissal, holding that the proper test for distinguishing between a direct and derivative claim is whether the shareholder has been injured directly and that an

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

art. VI, § 2.

action under Minn.Stat. § 302A.751, subd. 1, involving overlapping direct and derivative claims does not trigger the derivative pleading requirements of Minn. R. Civ. P. 23.06.

## FACTS

Archives Corporation is a closely held corporation in the document storage and retrieval business. When plaintiffs George Wessin and David Wessin brought this suit in January 1995, they collectively held about 11 percent of the corporation's stock. Fellow plaintiffs E.R. Salovich and George O. Holm held about 10.5 percent and 17.5 percent of the stock respectively. Archives' president, chief executive officer, and majority shareholder John Jerome held about 52 percent of the stock. Jerome's wife Sandra was a corporate officer. The suit identified two other minority shareholders, one who lived outside Minnesota and was not closely involved with Archives, and another who owned only a small percentage of stock.

In forming the corporation, John Jerome and Archives entered into loan agreements with shareholders Salovich and Holm. These agreements limited Jerome's compensation and benefits to 50 percent of Archives' net income up to $200,000, plus 20 percent of Archives' net income over $300,000. The minority shareholders alleged that Jerome engaged in misconduct by failing to comply with these loan agreements, failing to complete an accurate accounting of Archives' net profits for 1989–1992, and attempting to avoid the income limitations by paying Sandra Jerome a salary. They also alleged self-dealing, most significantly that Jerome compensated himself and his wife through actual or constructive dividends not paid to other shareholders and that Sandra Jerome accepted compensation for services not performed and failed to monitor John Jerome's alleged misconduct.

The Wessins also charged John Jerome with making a series of misrepresentations to them about his pay, his reimbursement and dividend payments from Archives, and Archives' financial status. They claimed he intended to deceive them and to induce them not to seek dividends or financial information. The Wessins alleged they were deceived by Jerome's misrepresentations and reasonably relied upon them to their detriment.

In February 1996, plaintiffs Salovich and Holm settled their claims and sold their shares back to Archives. The remaining parties, concerned about the cost of continued litigation, attempted to settle. Their negotiations ultimately failed. Archives and the Jeromes (collectively Archives) moved to dismiss or, in the alternative, for judgment on the pleadings, arguing that the Wessins incorrectly pleaded derivative claims as direct claims. The district court granted Archives' motion for judgment on the pleadings and dismissed the following complaints without prejudice:

Count I: Common law fraud and misrepresentation (against J. Jerome)

Count II: Fraud and misrepresentation; breach of Minn.Stat. § 302A.751, subd. 1(b)(2) (against J. Jerome and S. Jerome)

Count III: Unfair prejudice to plaintiff shareholders (against Archives, J. Jerome, and S. Jerome)

Count IV: Breach of fiduciary duties (against J. Jerome and S. Jerome)

Judgment was entered on October 7, 1997. On January 5, 1998, the Wessins moved to modify the order or to amend the pleadings, and to vacate the judgment. The district court denied all motions. Both parties appealed, and this court consolidated the cases. The Wessins appeal the October 7, 1997, judgment and the January 5, 1998, order. Archives contends the court erred by not dismissing all counts with prejudice.

## ISSUES

I. Did the district court err in determining that the Wessins incorrectly pleaded derivative claims as direct injuries?

II. Do the derivative action pleading requirements in Minn. R. Civ. P. 23.06 apply to an action under Minn.Stat. § 302A.751 alleging both direct and derivative claims?

## ANALYSIS

■ As a preliminary matter we address Archives' objection to the appealability of the issues raised by the Wessins. They have appealed from a judgment dismissing their claims without prejudice and an order denying their motion to vacate the judgment and amend the pleadings. The Wessins timely filed a notice of appeal from judgment dismissing the claims, and that dismissal is fully reviewable. Minn. R. Civ.App. P. 103.03(a) (party may appeal from judgment entered in district court); *Lombardo v. Seydow–Weber,* 529 N.W.2d 702, 703 (Minn.App.1995) (reviewing as appealable a judgment dismissing an action without prejudice), *review denied* (Minn. Apr. 27, 1995).

■ An order denying a motion to vacate a final judgment is not appealable. *Carlson v. Panuska,* 555 N.W.2d 745, 746 (Minn.1996). But when an appeal is properly taken from the underlying judgment, this court has discretion to review a subsequent, nonappealable order denying a motion to vacate. *See Bush Terrace Homeowners Ass'n v. Ridgeway,* 437 N.W.2d 765, 770 (Minn. App.1989), *review denied* (Minn. June 9, 1989); Minn. R. Civ.App. P. 103.04 (on appeal from judgment, appellate courts "may review any order involving the merits or affecting the judgment"). The issues relating to the subsequent order denying the motion to vacate and the motion to amend the pleadings are reviewable to the extent the issues were addressed on the record in the underlying proceeding. *Cf. Sullivan v. Spot Weld, Inc.,* 560 N.W.2d 712, 716 (Minn. App.1997) (parties cannot supplement district court record after court grants summary judgment), *review denied* (Minn. Apr. 27, 1997).

### I

The Wessins allege that Archives and J. Jerome paid actual or constructive dividends to J. Jerome and did not pay those actual or constructive dividends to the other shareholders, that J. Jerome knowingly misrepresented the nature and extent of the compensation he was receiving, knowingly misrepresented the payment of dividends to himself that were not paid to other share-holders, and knowingly misrepresented the financial status of Archives. The Wessins also allege that as a result of the fraudulent conduct, they did not seek further information on the financial status of the corporation. Archives interposed answers to the complaint before moving to dismiss, and the district court treated their motion as a motion for judgment on the pleadings under Minn. R. Civ. P. 12.03.

■ When considering a motion for judgment on the pleadings, the court must accept the allegations contained in the pleading under attack as true. *State ex rel. City of Minneapolis v. Minneapolis St. Ry. Co.,* 238 Minn. 218, 223, 56 N.W.2d 564, 567 (1952). All assumptions made and inferences drawn must favor the party against whom the judgment is entered. *Northern States Power Co. v. Franklin,* 265 Minn. 391, 396, 122 N.W.2d 26, 30 (1963).

■ The district court, applying Minnesota appellate case law, determined that the Wessins' claims were derivative claims. The district court's summary of the case law demonstrates a variance in the standard for determining whether an action is direct or derivative. Recent decisions by Minnesota courts and federal courts interpreting Minnesota law distinguish between direct and derivative claims by focusing on whether the shareholder's injury is "of the same character" as that of other shareholders. In *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche,* for example, the Minnesota Supreme Court noted that, in distinguishing between direct and derivative claims, courts must "consider whether the injury to the individual plaintiff is separate and distinct from the injury to other persons in a similar situation as the plaintiff." 535 N.W.2d 612, 617 (Minn.1995) *("Northwest")* (citing *Seitz v. Michel,* 148 Minn. 474, 476, 181 N.W. 106, 106 (1921) *("Seitz II")*).

In *Skoglund v. Brady,* this court first noted that "[a] shareholder may bring a direct action when the shareholder alleges a direct injury to the shareholder that is separate and distinct from the injury to the corporation." 541 N.W.2d 17, 21 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996) (citing *Arent v.*

*Distribution Sciences, Inc.,* 975 F.2d 1370, 1372 (8th Cir.1992)). But the court continued by quoting the following test, also stated in *Arent:*

> To determine whether a claim belongs to the corporation rather than to its shareholders, the relevant inquiry is 'whether the injury to each stockholder is of the same character.'

*Id.* (quoting *Seitz v. Michel,* 148 Minn. 80, 87–88, 181 N.W. 102, 105 (1921) ("*Seitz I*")).

Although *Skoglund* turns on the same test as *Northwest,* each court applied the test differently. The *Skoglund* court concluded that the shareholder had not asserted an injury that was separate from the injury to the corporation, without analyzing the underlying claim. 541 N.W.2d at 21. The *Northwest* court focused instead on whether the plaintiff sustained a *direct* injury. 535 N.W.2d at 619. The *Northwest* court concluded that Northwest asserted a direct claim based on "specific misrepresentations in the audit report that affected Northwest directly in its decision to purchase the debentures at issue." *Id.; see also Arent,* 975 F.2d at 1373, 1373 n. 2 (applying same character test of *Seitz I* but noting that "[i]ndividual recovery is warranted only if there is a direct injury to the shareholder" and citing cases in which shareholders brought direct actions based on their other relationships with corporation).

Strict adherence to the "same character" test outlined in *Skoglund* and *Northwest* misapplies the holdings of *Seitz I* and *Seitz II*. *Seitz I* first used the "same character" language, but the decision turned on the court's determination that a claim for waste of corporate assets belonged to the corporation. 148 Minn. at 87, 181 N.W. at 105. The "same character" language is not the test for distinguishing direct claims from derivative claims. It is merely the court's description of the derivative injury at issue:

> Money which might have been distributed among them as dividends has been wasted. The value of all the stock has been diminished. The injury to each stockholder is of the same character. Whether the guilty officers were animated by hostility towards a particular stockholder or by greed, or

were merely improvident, the result is the same and affects all the stockholders alike. *Id.* at 87–88, 181 N.W. at 105; *see also Arent,* 975 F.2d at 1372 (same character test is "well-recognized method for determining whether a claim belongs to the corporation, rather than its shareholders"); Daniel S. Kleinberger and Imanta Bergmanis, *Direct v. Derivative, or What's a Lawsuit Between Friends in an "Incorporated Partnership?"* 22 Wm. Mitchell L.Rev. 1203, 1250–55 (1996) (discussing misapplication of "same character" language).

Similarly, the key passages of *Seitz II* simply describe the derivative injury at issue and do not provide a workable test for distinguishing between direct and derivative actions. *See* 148 Minn. at 476, 181 N.W. at 106 ("[t]he conspiracy may have been directed against the plaintiff, and the defendants may be liable for the acts with which they were charged, but their acts resulted ultimately in the dissipation of corporate funds. Plaintiff is injured just as all other stockholders are injured when the officers of a corporation waste or misapply its money.").

Even when the language of *Seitz I* and *Seitz II* is correctly cited, its strict applicability is questionable. Both cases were decided in 1921, 60 years before the enactment of Minnesota's existing Business Corporations Act, which is designed to protect minority shareholders from the very abuses at issue in the *Seitz* cases. The language in *Skoglund* and *Northwest* that focuses on a direct injury to the shareholder that is distinct from the injury to the corporation is more consistent with the policies underlying the direct-derivative distinction. This standard also corresponds with more modern cases that require the plaintiff to be injured *directly* or *independently* from the corporation as a basis for a direct action. This trend is emerging but not yet refined in Minnesota. *See Wenzel v. Mathies,* 542 N.W.2d 634, 641 (Minn.App. 1996) (derivative action required when shareholder suffers harm "that is indistinct from the other shareholders or by the corporation itself"), *review denied* (Minn. Mar. 28, 1996); *International Broadcasting Corp. v. Turner,* 734 F.Supp. 383, 392 (D.Minn.1990) (recognizing that the test for a direct injury is

whether claimant's injury is distinct from the corporation, but characterizing shareholders' claims for breach of fiduciary duty as derivative because alleged injury was not "separate and distinct from all shareholders"). Other jurisdictions, however, have clearly recognized that the test for determining whether an action is direct or derivative is whether the shareholder has suffered an injury that is distinct from the corporation. *See Kramer v. Western Pac. Indus.,* 546 A.2d 348, 351 (Del. 1988) (applying same test). A "direct or independent" injury may also be a wrong involving a contractual right that is independent of any right of the corporation. *Id.; see also Grace Bros., Ltd. v. Farley Indus., Inc.,* 264 Ga. 817, 450 S.E.2d 814, 816 (1994) (noting that this standard "is generally recognized as the test that distinguishes derivative from direct claims").

■ In distinguishing between direct and derivative actions, courts must examine the nature of the shareholder's claim, as well as the relief that could result from the action if successful, by looking at the body of the complaint rather than the plaintiff's designation or stated intention. *Kramer,* 546 A.2d at 352; *see also Grimes v. Donald,* 673 A.2d 1207, 1213 (Del.1996) (applying *Kramer* test); *Spillyards v. Abboud,* 278 Ill.App.3d 663, 215 Ill.Dec. 218, 662 N.E.2d 1358, 1363 (1996) (same); *Seinfeld v. Bays,* 230 Ill.App.3d 412, 172 Ill.Dec. 6, 595 N.E.2d 69, 76 (1992) (same). The court may consider any of the following factors: (a) whether the injury results from the plaintiff's other relationships with the corporation, such as the plaintiff's role as an intended third-party beneficiary of a contract, *see Arent,* 975 F.2d at 1373 n. 2; (b) whether the alleged misconduct was specifically targeted toward the plaintiff shareholder, *see Northwest,* 535 N.W.2d at 619; (c) whether the controlling stockholders engaged in self-dealing that causes a "singular economic injury" to minority interests alone, *Grace Bros.,* 450 S.E.2d at 816; (d) whether the defendants' alleged misconduct violates fiduciary duties owed directly to the plaintiffs, *see Lee v. Mitchell,* 152 Or.App. 159, 953 P.2d 414, 423–25 (1998); or (e) whether the plaintiff is seeking only injunctive or prospective relief, *see Grimes,* 673 A.2d at 1213 (citing ALI Principles of Corporate Governance: Analysis and Recommendations § 7.01, cmt. d (1992)).

■ Refocusing the analysis on the "direct" or "independent" injury and away from whether the injury is distinct from the injury suffered by other shareholders changes the analysis. Although some of the Wessins' allegations may not qualify as direct claims, we are satisfied, based on the record and the applicable standard, that the Wessins have alleged at least three claims that meet the criteria for a direct action: (1) fraud and misrepresentation (both common law and statutory); (2) breach of fiduciary duty; and (3) unfair prejudice.

As part of their fraud and misrepresentation claims, the Wessins alleged that Archives' fraudulent actions prevented them from seeking dividend compensation or financial information. We reject the argument that had they sought such compensation or information, all shareholders would have been affected in the same way. If, as alleged, the Wessins decided not to seek dividends or financial information based on a direct misrepresentation from Archives' president, chief executive officer, and majority shareholder, the injury is direct. The fact that all shareholders would have shared in the dividends or information does not transform the claim into an indirect or derivative claim, given Archives' size and character and the alleged wrongdoer's pivotal role in the corporation. In addition to holding about 52 percent of Archives' stock, John Jerome served as its president, chief executive officer, and majority shareholder. The Wessins held just 11 percent, and the other two shareholders with a significant interest held about 28 percent.

The Wessins also alleged a claim of fraud and misrepresentation for breach of Minn. Stat. § 302A.751, subd. 1(b)(2). For the same reasons that the common law claims are direct, the statutory claims for fraud and misrepresentation are also direct claims.

■ The common law claim of breach of fiduciary duty against John Jerome and Sandra Jerome includes allegations of self-dealing and conflict of interest involving the ma-

jority shareholder and his wife who served as a corporate officer. Shareholders in a closely held corporation have a fiduciary duty to treat each other according to the highest standards of integrity and good faith. Minn. Stat. § 302A.751, subd. 3a (1996). Under the enhanced fiduciary duty, the Wessins have a direct claim for breach. *See Wenzel v. Mathies*, 542 N.W.2d at 641 (attempted squeeze-out is basis for direct action in context of closely held corporation).

■ The third claim that qualifies as direct is the claim of unfair prejudice for breach of Minn.Stat. § 302A.751, subd. 1(b)(3). A claim of unfair prejudice to a shareholder is by its nature ordinarily a direct claim. *See* Minn.Stat. § 302A.751, subd. 1(b)(3) (1996) ("directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders"). Given the procedural posture of the case, the Wessins have adequately set forth a direct-injury claim.

We conclude that the Wessins have stated three direct injuries. Consequently, we proceed to an analysis of whether it is necessary for the district court to segregate which claims would be subject to the derivative action pleading requirement and which are not.

## II

■ The Wessins pleaded all of their claims directly against Archives and the Jeromes. In response to Archives' charge that the claims are derivative and therefore improperly pleaded, the Wessins ask this court to recognize an exception from derivative pleading rules for claims brought under Minn.Stat. § 302A.751, subd. 1(b), by minority shareholders in closely held corporations. While the Wessins contend this is an issue of first impression, Archives contends the Minnesota Supreme Court has already considered and rejected this proposition. *See PJ Acquisition Corp. v. Skoglund*, 453 N.W.2d 1, 14 (Minn.1990) (Yetka, J., dissenting, joined by Popovich and Wahl, JJ.) (section 302A.751 was intended to supersede Minnesota's derivative pleading requirements in cases involving closely held corporation).

We are not convinced that Archives' reading of *PJ Acquisition* is correct. First, the critical question raised and decided by the *PJ Acquisition* court was whether the plaintiff shareholder had standing to bring an action against a corporation for alleged wrongful acts that occurred before it became a shareholder. *Id.* at 4–5. Second, the *PJ Acquisition* plaintiff "seemingly acknowledged" that its claims belonged to the corporation. *Id.* at 4. Third, the majority's holding was based on the fact the plaintiff was not a shareholder at the time of the alleged wrongs and could not prove that its claims fell within the "continuing wrongs" exception to the general requirement of contemporaneous ownership. *Id.* at 6–7. But most significantly, the majority or "lead" opinion (Justices Kelley, Simonett, and Coyne, joined by Justice Keith in his concurring opinion) does not directly address the exact issue before this court—whether a shareholder in a closely held corporation who alleges both direct and derivative claims must comply with the derivative action pleading requirements.

A shareholder who cannot allege a direct injury must bring a derivative action by following the procedural requirements outlined in Minn. R. Civ. P. 23.06:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation * * *, the corporation * * * having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. * * * The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders or members similarly situated in enforcing the right of the corporation or association. * * *

Minn. R. Civ. P. 23.06. For purposes of determining how rule 23.06 applies to actions brought by shareholders in a closely held corporation, we must examine both the history of the applicable legislation and the development of the case law.

## A. Legislative History of Minn.Stat. § 302A.751

Enacted by the Minnesota legislature in 1981, chapter 302A was designed to modernize the state's Business Corporations Act to conform to contemporary practice. *Hearing on HF 165 Before the House Comm. on Commerce and Economic Development* (Apr. 21, 1981) (statement of Rep. Ellingson). Recognizing that most Minnesota corporations are small businesses, drafters worked to provide "the flexibility, informality, and ease of operation" essential to their success. *Id.* One of the central goals was to make it easier for small businesses to use the law through simplified paperwork, reduced filing fees, and other similar features. *Id.* Another central objective was to create a law that provided Minnesota's small corporations with "the benefit of a good attorney." *House General Session* (May 15, 1981) (statement of Rep. Ellingson before final voting). *See generally* Official Report, Advisory Task Force on Minnesota Corporation Law, 1981 ("Task Force Report") (outlining background and purpose of proposed new Minnesota Business Corporation Act and providing section-by-section analysis of proposed act).

In keeping with these goals, chapter 302A contained a number of important protections for minority shareholders in closely held corporations, most notably section 751, which allows courts to grant equitable relief or to dissolve the corporation in cases of management misconduct:

> Subdivision 1. When permitted. A court may grant any equitable relief it deems just and reasonable in the circumstances or may dissolve a corporation and liquidate its assets and business:
>
>     *    *    *    *    *    *
>
> (b) In an action by a shareholder when it is established that:
>
> (1) the directors or the persons having the authority otherwise vested in the board are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock;
>
> (2) the directors or those in control of the corporation have acted fraudulently or illegally toward one or more shareholders in their capacities as shareholders or directors, or as officers or employees of a closely held corporation;
>
> (3) the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders in their capacities as shareholders or directors of a corporation that is not a publicly held corporation, or as officers or employees of a closely held corporation;
>
> (4) the shareholders of the corporation are so divided in voting power that, for a period that includes the time when two consecutive regular meetings were held, they have failed to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors;
>
> (5) the corporate assets are being misapplied or wasted; or
>
> (6) the period of duration as provided in the articles has expired and has not been extended as provided in section 302A.801;
>
>     *    *    *    *    *    *

Minn.Stat. § 302A.751, subd. 1(b) (1996).

The new provisions of section 302A.751 were generally similar to existing law listing grounds for involuntary dissolution, but the legislation provided courts with the added power to order equitable relief. *Hearing on SF 120 Before the Senate Judiciary Subcommittee* (Mar. 16, 1981) (testimony of Bert Black, Office of the Secretary of State). Drafters believed this power would "make the courts more responsive to any abuses or minority oppression that's going on because of course when you have a lesser relief, there is usually a lesser threshold of abuse that is required in order to impose or order that relief." *Id.*; *see also* Task Force Report at 138–39 (explaining change from former law and providing general commentary).

Section 302A.751 has been amended four times since its enactment in 1981. In 1982, as part of a series of technical amendments to chapter 302A, the legislature clarified that a court-ordered buyout is available to shareholders in corporations with 25 or fewer shareholders at the time the action is commenced for claims involving specific circumstances described in subdivision 1(b) and that

courts must consider terms of any shareholder control agreements as long as they are reasonable. 1982 Minn. Laws ch. 497, § 64.

A year later, legislators made a more significant change to subdivision 1(b)(2) by substituting the term "unfairly prejudicial" for the term "persistently unfair" and by adding new subdivision 3(a) to provide courts with guidance in granting relief involving closely held corporations. 1983 Minn. Laws ch. 368, §§ 9, 10, 11. Drafters were encouraged to adopt the "unfairly prejudicial" standard because courts were interpreting the term "persistently unfair" in an unfairly negative or narrow manner. *Hearing on SF 964 Before the House Subcommittee on Judicial Administration* (Apr. 6, 1983). The change was also consistent with the terminology used in the Closed Corporation Supplement to the Model Business Corporation Act. *Id.* Drafters urged the adoption of a new subdivision 3(a) "to assist the court in making its determination about the circumstances under which relief should be granted to minority shareholders" and to recognize formally the duty that shareholders in closely held corporations have to act in an honest, fair, and reasonable manner to each other. *Id.*

In 1986, legislators further refined the section by changing the section title from "Involuntary Dissolution" to "Judicial Intervention; Equitable Remedies or Dissolution" and by adding a new subdivision 3(b), which clarified that in deciding whether to order dissolution, courts must consider lesser relief suggested by one or more parties and may order such relief where appropriate. 1986 Minn. Laws ch. 431, § 3. The final amendment, made in 1994, provided that officers and employees of closely held corporations be treated in the same manner under subdivision 1(b)(2), expanded the remedy of equitable relief to shareholders in non-publicly held corporations, and provided additional guidance to courts as to consideration of shareholder agreements under subdivision 3a. 1994 Minn. Laws ch. 417, §§ 9, 10, 11.

Neither the original enactment nor any of the subsequent amendments directly addresses how this section, which is designed to protect the rights of minority shareholders in closely held corporations, affects traditional, common law requirements for bringing shareholder actions.

## B. Shareholder Litigation in the Context of Closely Held Corporations

As a general rule, a shareholder may not assert directly a cause of action that belongs to the corporation itself. *Skoglund,* 541 N.W.2d at 21. A shareholder who alleges a direct injury that is "separate and distinct from the injury to the corporation" may bring a direct action. *Id.* A shareholder who cannot allege a direct injury must bring a derivative action by following the procedural requirements outlined in Minn. R. Civ. P. 23.06.

Minnesota's appellate case law recognizes a distinction between large publicly held corporations and small closely held corporations. For example, in *Westland Capital Corp. v. Lucht Eng'g, Inc.,* the Minnesota Supreme Court described a closely held corporation as a "partnership in corporate guise." 308 N.W.2d 709, 712 (Minn.1981). As a result of the similarity between a closely held corporation and a partnership, Minnesota has recognized that a fiduciary relationship exists among the shareholders in a closely held corporation. *Evans v. Blesi,* 345 N.W.2d 775, 779 (Minn.App.1984), *review denied* (Minn. June 12, 1984). This fiduciary relationship imposes the highest duties of honest, integrity, and good faith. *Pedro v. Pedro,* 489 N.W.2d 798, 801 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). The legislature formally recognized these duties in 1983 by adding a new subdivision to Minn.Stat. § 302A.751. *See* 1983 Minn. Laws ch. 497, § 64 (in determining whether to order equitable relief, dissolution, or buyout, a court must consider "the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair and reasonable manner").

The Minnesota case law draws from a philosophy similar to that supporting the rule enunciated by the American Law Institute (ALI). The rule is premised on the ALI's recognition that the policy reasons for requiring derivative actions do not apply to shareholders in a closely held corporation because (1) the chances of a disinterested

board in a closely held corporation with few shareholders are slim; and (2) the possibility of multiple lawsuits by shareholders with only a nominal interest—a central reason for the derivative action rule—is equally slim. Principles of Governance: Analysis and Recommendations, § 7.01, cmt. e (American Law Institute 1994). The ALI rule allows judicial discretion in determining whether shareholders of closely held corporations can bring direct actions:

> In the case of a closely held corporation * * * the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id.*

Although the derivative pleading requirements are critical to the successful operation of large publicly held corporations, they are not consistent with the manner in which the Minnesota legislature or the courts treat closely held corporations. Requiring minority shareholders in closely held Minnesota corporations to follow the derivative pleading requirements of Minn. R. Civ. P. 23.06 when bringing actions under Minn.Stat. § 302A.751, subd. 1(b), appears inconsistent with its fundamental legislative intent and purpose. A derivative pleading requirement would substantially restrict the availability of Minn.Stat. § 302A.751, subd. 1. This restriction would thwart the legislative purpose of section 302A.751, subd. 1, which was expressly enacted to protect minority shareholders in closely held corporations.

The emerging trend among jurisdictions that have addressed this issue is consistent with the Minnesota legislative and judicial history and would support not imposing a derivative pleading requirement on closely held corporations. *See Watson v. Button,* 235 F.2d 235, 237 (9th Cir.1956) (permitting individual shareholder to recover for misappropriation of corporate assets by a director "where the rights of creditors and other shareholders are not prejudiced"); *Orsi v. Sunshine Art Studios, Inc.,* 874 F.Supp. 471, 474–75 (D.Mass.1995) (allowing minority shareholder to bring direct action against close family corporation); *Kirk v. First Nat'l Bank of Columbus,* 439 F.Supp. 1141, 1148–49 (M.D.Ga.1977) (permitting former shareholders to bring direct action based on *Watson v. Button* for causing diminution in value of previously owned shares); *Johnson v. Gilbert,* 127 Ariz. 410, 621 P.2d 916, 918 (Ariz.Ct. App.1980) (permitting direct action against closely held corporation involving plaintiffs and defendants who "operated more as partners than in strict compliance with the corporate form"); *Dunaway v. Parker,* 215 Ga. App. 841, 453 S.E.2d 43, 48 (1994) (plaintiffs' alternative claim for direct relief properly before jury when possibility of multiple lawsuits unlikely and no possibility of prejudice to other interested stockholders); *Steelman v. Mallory,* 110 Idaho 510, 716 P.2d 1282, 1284–85 (1986) (minority shareholders in closely held corporation may bring direct action when gravamen of their complaint is that majority shareholders/directors breached their fiduciary duty by attempting squeeze out); *Barth v. Barth,* 659 N.E.2d 559, 562–63 (Ind.1995) (adopting ALI rule and determining that the trial court "has discretion to decide whether a plaintiff must proceed by direct or derivative action"); *Richards v. Bryan,* 19 Kan.App.2d 950, 879 P.2d 638, 647–48 (1994) (if action involves closely held corporation, court has discretion to treat derivative claim as a direct action as long as doing so will not result in multiplicity of actions, materially prejudice the rights of creditors, or interfere with "a fair distribution of the recovery among interested persons"); *Horizon House–Microwave, Inc. v. Bazzy,* 21 Mass.App.Ct. 190, 486 N.E.2d 70, 74 (1985) (allowing minority shareholder to bring direct action against corporation and the majority shareholders to the extent that the gravamen of his complaint was "abuse of fiduciary duty by majority shareholder"); *Derouen v. Murray,* 604 So.2d 1086, 1091 n. 2 (Miss.1992) (adopting ALI position); *Schumacher v. Schumacher,* 469 N.W.2d 793, 798–800 (N.D.1991) (discussing ALI rule and con-

cluding trial court abused its discretion in refusing to allow minority shareholders to bring direct action for claim of breach of fiduciary duty by majority shareholders); *Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E.2d 217, 221 (1989) (minority shareholders in closely held corporations may bring direct actions against majority shareholders for breach of fiduciary duty); *Wulf v. Mackey*, 135 Or.App. 655, 899 P.2d 755, 757 (1995) (same). *But see Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 161–62 (7th Cir. 1996) (discussing but concluding Illinois had not adopted ALI rule); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 384 (7th Cir.1990) (concluding that Delaware has not adopted ALI rule); *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 615 (9th Cir.1987) (declining to recognize exception under facts of case although question is undecided in Montana courts); *River Management Corp. v. Lodge Properties, Inc.*, 829 P.2d 398, 404 (Colo.Ct.App.1991) (declining to recognize direct action for waste or mismanagement but allowing direct action for breach of fiduciary duty); *Landstrom v. Shaver*, 561 N.W.2d 1, 14–15 (S.D.1997) (declining to adopt ALI rule).

The Wessins' claim against Archives illustrates the significant problem of finding a sufficient number of disinterested directors in a closely held corporation to constitute a special litigation committee. The claim also illustrates the problem of providing an adequate remedy for a shareholder's economic injury: when the alleged wrongdoer is also the majority shareholder, the wrongdoer receives the benefit of any recovery in a derivative action—thereby magnifying the injury to the minority shareholder who initiated the action.

As previously observed, it is not necessary for us to determine whether a derivative pleading requirement applies to a purely derivative action brought by a closely-held-corporation shareholder under Minn.Stat. § 302A.751, subd. 1(b), because the Wessins' claims involve direct as well as indirect claims. In analyzing the scope of the derivative pleading requirement, we first observe that the plain language of rule 23.06 imposes the requirement on derivative *actions*, not

derivative claims. An action that involves both direct claims and derivative claims would, strictly speaking, not be a derivative action. Although this is admittedly a constrained reading of the rule, it is consistent with the history and treatment of closely held corporations. Interpreting the rule narrowly also provides a reasonable method for litigating actions that have overlapping claims without creating complex and confusing procedures. This interpretation also is consistent with emerging Minnesota case law. In *Warthan v. Midwest Consol. Ins. Agencies, Inc.*, this court allowed minority shareholders to bring a direct action when majority shareholders' alleged misconduct involved both derivative and direct injuries. 450 N.W.2d 145, 148–49 (Minn.App.1990). Although this court did not address the direct-derivative distinction, it allowed minority shareholders to bring a direct suit for an arguably derivative claim involving the transfer of almost all the corporation's assets to another corporation controlled by directors of the first corporation in violation of Minn.Stat. § 302A.661, subd. 2. *Id.* at 149. The minority shareholders also alleged direct injuries, including denial of access to corporate records and books under the majority's control in violation of Minn.Stat. § 302A.461, subd. 4. *Id.*

A close reading of *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche* also reflects this trend. 535 N.W.2d at 619. The case involved claims of misrepresentation against the auditor for an insolvent debenture issuer brought by an individual debenture holder. *Id.* at 613. In determining that the debenture holder's claims were direct, the Minnesota Supreme Court acknowledged that the auditor's misrepresentations indirectly affected the debenture holder, but focused on specific misrepresentations in the audit report that affected the debenture holder directly. *Id.* at 619; *see also* Kleinberger and Bergamis, *supra* at 1262–63 (discussing Minnesota's "unstated rule" that "existence of derivative claims should not preclude a shareholder from asserting a claim that is genuinely personal and direct").

The language of the rule, the legislative and common law history, and the need for

coherent litigation procedures persuade us that derivative pleading requirements should not apply to actions that combine direct and derivative claims. Archives raises additional procedural issues on appeal. Our holding on pleading requirements and the test for determining direct versus derivative actions makes it unnecessary for us to reach the additional procedural issues.

## DECISION

Because Minnesota's derivative pleading requirements apply only to derivative actions, not derivative claims, we hold that they do not apply to actions that combine direct and derivative claims under Minn.Stat. § 302A.751, subd. 1(b).

**Reversed and remanded.**