**Vivian Elsa SIMON, Edward Simon, and Donald Simon Plaintiffs,**

v.

**Len MANN and Does 1 through 20, inclusive, Defendants.**

No. CV–N–04–0472–ECR(VPC).

United States District Court, D. Nevada.

June 15, 2005.

Vivian Elsa Simon, Watsonville, CA, Pro Se.

Edward Simon, Watsonville, CA, Pro Se.

Donald Simon, Watsonville, CA, Pro Se.

Julian C. Smith, Smith & Harmer, Ltd., Carson City, NV, for Defendants.

### ORDER

EDWARD C. REED, JR., District Judge.

## I. Procedural Background

On August 31, 2004, Plaintiffs Vivian Elsa Simon, Edward Simon, and Donald Simon ("Plaintiffs") filed a Complaint (# 2) for damages, alleging a breach of fiduciary duty to minority shareholders. On March 22, 2005, Defendant Len Mann filed a Motion for Summary Judgment (# 39). Plaintiffs responded (# 49) to the motion on May 16, 2005, and Defendant replied (# 53) to their response on May 31, 2005. The motion (# 39) is ripe, and we now rule on it.

For the reasons stated below, Defendant's motion will be **DENIED**.

## II. Factual History

Defendant Mann is a resident of Nevada. All plaintiffs are residents of California. Plaintiffs and Defendant are shareholders of United States Welding Corporation ("USWC"), currently incorporated in Nevada. USWC was established by Plaintiffs' now-deceased father approximately 45 years ago in California. Defendant Mann was originally hired as a consultant in 1987 and now runs the business in Nevada. At the time the instant lawsuit was filed, the breakdown of ownership of the corporation was as follows: Defendant Mann owned approximately 44% of the shares, Plaintiffs' mother, Ruth Simon, owned approximately 44%, and Plaintiffs owned diverse fractions of the remaining 12%.[1] The Board of Directors consisted of Defendant Mann, Plaintiff Donald Simon, and Ruth Simon.

Plaintiffs allege serious charges of mismanagement, self-dealing, and manipulations of the corporate framework on the part of Defendant Mann. They allege Mann used corporate funds for personal purchases, such as a boat and expensive club memberships, and that he has appropriated unreasonably high proportions of the corporation's profits for his own benefit. They allege he has cancelled annual shareholder meetings and terminated directors' fees to Ruth and Donald Simon. Plaintiffs claim that these and other actions by Defendant Mann constitute breaches of his fiduciary duties to them as minority shareholders and have put the corporation in substantial danger.

## III. Discussion

Defendant Mann requests summary judgment on two bases: 1) the corporation, USWC, is a necessary party to a derivative action, and 2) Plaintiffs failed to

---

1. Within their pleadings, Plaintiffs have raised concerns over a buy-sell agreement between Defendant Mann and Ruth Simon and an arbitration order regarding the agreement which compels Ruth Simon to sell all her shares to Defendant. It is not clear to the court at this time whether or not Ruth Simon is currently a shareholder or a director. Her motion to intervene was dismissed by this court without prejudice and it is anticipated that she may renew her attempt to intervene.

demonstrate efforts to obtain their desired results through the corporate channels as required by Fed.R.Civ.P. 23.1.

## A. Choice of Law

■ The diversity of the parties in the case at bar creates its federal jurisdiction. "In diversity actions, the characterization of an action as derivative or direct," a key inquiry in this case, "is a question of state law." *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir.1987). Determining which state law applies requires further inquiry. According to the Restatement (Second) of Conflict of Laws § 306 (1971),

> The obligations owed by a majority shareholder to the corporation and to the minority shareholders will be determined by the local law of the state of incorporation, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the corporation, in which event the local law of the other state will be applied.[2]

In applying this test to the case at bar, we find Nevada law should control. Although the three plaintiffs are residents of California, and USWC was originally incorporated in California, there is no indication that California has a more significant relationship to the issues at hand than does Nevada. USWC is currently incorporated in Nevada and all of the alleged wrongdoings occurred in Nevada. Furthermore, the parties have not raised any particular policy concerns that would warrant the application of California law. Thus, we will apply Nevada law to the issues at hand. To the extent that any issues raised have not yet been confronted by the Nevada Supreme Court, we will attempt to predict how the Nevada Court would decide them. *Horwitz v. Southwest Forest Indus., Inc.*, 604 F.Supp. 1130, 1134 (D.Nev., 1985). In so doing, we will look to decisions by the Nevada State courts and those of other jurisdictions for guidance. *See Mirch v. Frank*, 295 F.Supp.2d 1180, 1183 (D.Nev.2003).

## B. USWC Is Not A Necessary Party

■ Defendant is correct that a corporation is a necessary party to a derivative action. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). However, we find that this case falls under exceptions that allow for a minority shareholder to file a direct action for relief that would normally be considered derivative.

First, the facts of this case indicate that the interests of justice may best be served by applying the closely-held corporation exception, which allows a minority shareholder to file a direct or individual action against another shareholder for wrongs which would normally have to be brought derivatively on behalf of the corporation. The exception, which is subject to a court's discretion, both prevents the shareholder wrongdoer from unjustly benefitting from an award to the corporation, as would occur in a successful derivative lawsuit, and insures that the shareholder plaintiff is properly compensated. *Orsi v. Sunshine Art Studios, Inc.*, 874 F.Supp. 471, 474–75, (D.Mass.1995); 12B Fletcher Cyclopedia of Law of Private Corp. § 5908. The exception is premised on the proposition that in

---

2. The § 6 factors are:
(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971).

a closely-held corporation, the relatively few shareholders are generally also the parties to the suit, and thus the attendant remedies and policy concerns are distinct from those arising in derivative suits for publicly-held corporations. *Orsi* 874 F.Supp. at 475 (also noting that shareholders in closely-held corporations cannot simply sell their shares publicly as a means of recovery).

The American Law Institute's Principles of Corporate Governance provide a helpful policy-based test for allowing direct actions in closely-held corporations.

> [T]he court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id.* at § 7.01(d). Some state courts have used this analysis in finding that direct actions were proper in cases of minority shareholders alleging corporate wrongs by majority shareholders. *See, e.g., Caswell v. Jordan*, 184 Ga.App. 755, 758, 362 S.E.2d 769, 773 (1987); *Johnson v. Gilbert*, 127 Ariz. 410, 412, 621 P.2d 916, 918 (Ariz. App.1980).

In addition to this equity-based theory for allowing direct actions in closely-held corporations, the special duties owed to minority shareholders in closely-held corporations provide a more traditional means of obtaining individual relief. "It is well settled that an individual cause of action can be asserted when the wrong is both to the stockholder as an individual and to the corporation." *Far West Fed. Bank, S.B. v. Office of Thrift Supervision–Dir.*, 119 F.3d

1358, 1364 (9th Cir.1997). Here, in addition to the individual wrong alleged by Plaintiff Donald Simon in having his director's fees terminated by Defendant, all Plaintiffs have alleged the wrong of breach of fiduciary duties to minority shareholders. An Oregon court allowed a direct action in similar circumstances. *Noakes v. Schoenborn*, 116 Or.App. 464, 471–72, 841 P.2d 682, 686–87 (1992). The court in *Noakes* noted the special fiduciary duties owed to minority shareholders by majority shareholders in closely-held corporations and found that a breach of those duties, such as "attempts to eliminate minority shareholders from the enterprise or deprive them of their proportionate powers and rights without a just equivalent," constituted the kind of individual injury which allowed a shareholder to bring a direct suit. *Id.*

Whether these exceptions apply in Nevada appears to be a matter of first impression. However, the Nevada Supreme Court has recognized the particular difficulties shareholders face in closely-held corporations when seeking redress for other shareholders' wrongs. *See, Johnson v. Steel, Inc.*, 100 Nev. 181, 184–85, 678 P.2d 676, 678–79 (1984) (allowing shareholders in closely-held corporation to circumvent demand requirement of Fed.R.Civ.P. 23.1 because oppression by majority shareholders would render the demand futile). We predict that the Nevada Supreme Court would find both the American Law Institute's and the Oregon court's guidance in this area to be persuasive and, thus, we will apply their reasoning to the case at bar.

However, in deference to Defendant's arguments to the contrary, we must first determine whether USWC qualifies as a closely-held corporation. To do so, we find it helpful to look to another treatise for guidance. According to O'Neal and

Thompson's Close Corporations and LLCs: Law and Practice,

> The terms "close corporation," "closed corporation" and "closely held corporation" are often considered to be synonymous and are used interchangeably. "Closed" sometimes emphasizes a determination on the part of the participants in the enterprise to keep outsiders from acquiring any interest in the business and may indicate that they have taken steps to accomplish that objective by shareholders' agreement or provision in the articles of incorporation or bylaws. "Closely held" seems to focus more on the number of shareholders in the corporation at that particular time, indicating that they are few in number. The term "statutory close corporation" is sometimes used to describe those corporations which are covered by a statutory close corporation supplement or other special statute, particularly legislation that requires the corporation to elect to come under the special statute... [T]he number of statutory close corporations is a small fraction of the number of corporations that fall within the other close corporation definitions.

1 F. Hodge O'Neal & Robert B. Thompson, Close Corporations and LLCs: Law and Practice § 1:4 (Rev.3d ed.2004) (citations omitted).

When applying the parameters set out by O'Neil, we find that USWC is correctly identified as closely-held. Although Defendant Mann argued in his reply that USWC is a private corporation pursuant to Nev.Rev.Stat. 78, as opposed to a close corporation formed pursuant to Nev.Rev. Stat. 78A; he had previously characterized the corporation as "closely held" in his motion for summary judgment. While Nev.Rev.Stat. Chapter 78A provides a statutory framework for creating close corporations, whether or not USWC is one of the relatively few "statutory close corporations" discussed by O'Neil cannot be deter-mined, as no evidence of this issue was provided. Regardless, the cases that allow shareholders to bring direct suits make no distinction between statutory and non-statutory close corporations, but rather focus on the nature of the shareholders' relationships and the policy impacts of allowing direct actions. Thus, we find that a fluid interpretation of the terms "close" and "closely-held" would best serve the intent behind the exceptions to derivative suits.

In applying the above analyses to the facts at hand, we find that this case is a proper one to treat as a direct suit. First, all of the plaintiffs have alleged the individual wrong of breach of fiduciary duty, and one has alleged his director's fees have been terminated. Second, with the exception of Ruth Simon, whose current status as a shareholder is unknown to the court and who has been attempting to intervene, all of the shareholders are parties to the suit; and thus there is limited danger of multiple lawsuits or unfair recovery. Third, according to Plaintiffs, there are no outside creditors who would have priority for any remedies. Finally, relief to the corporation would mostly benefit Defendant Mann, the alleged wrongdoer in control of the corporation, and thus Plaintiffs could not obtain adequate relief through a derivative lawsuit. Therefore, we apply the exceptions for closely-held corporations and allow Plaintiffs to proceed in a direct suit. Because we do not characterize Plaintiffs' suit as derivative, USWC is not a necessary party to the suit, and its absence as a party is not a basis for summary judgment.

## B. Rule 23.1 Does Not Apply

Defendant also claims that Plaintiffs have failed to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... or shareholders ... and

the reasons for the plaintiff's failure to obtain the action or for not making the effort" as required by Fed.R.Civ.P. 23.1. (Def's Mot. for S.J. (# 39) at 3). Because we have held that Plaintiffs' suit is best characterized as direct, rather than derivative, Fed.R.Civ.P. 23.1 does not apply and cannot serve as a basis for summary judgment. *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1133 (D.Haw.1983).

***IT IS, THEREFORE, HEREBY ORDERED*** that, as addressed above, Defendant's Motion for Summary Judgment (# 39) is **DENIED**.