George WESSIN, David Wessin, E.R. Salovich, M.D., and George O. Holm, Respondents,

v.

ARCHIVES CORPORATION, a Minnesota Corporation, John D. Jerome and Sandra Jerome, Petitioners, Appellants.

Nos. C5–98–28, C3–98–30.

Supreme Court of Minnesota.

May 13, 1999.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant Archives Corp.

Vincent D. Louwagie, Fruth & Anthony, Minneapolis, for appellants John D. and Sandra Jerome.

David R. Marshall, Cynthia Jokela, Steven J. Quam, Fredrikson & Byron, P.A., Minneapolis, for respondents.

## OPINION

GILBERT, J.

This case was brought as a direct action by some of the minority shareholders of a close-

ly held corporation. The minority shareholders allege that the corporation's majority shareholder misappropriated and wasted corporate assets. The minority shareholders sought recovery on their own behalf, rather than on the behalf of the corporation pursuant to Minn. R. Civ. P. 23.06, which governs derivative actions. The trial court determined that all of the minority shareholders' claims were derivative. Because the minority shareholders had failed to follow the derivative pleading requirements of Minn. R. Civ. P. 23.06, the trial court entered judgment on the pleadings against them and dismissed the case without prejudice. The court of appeals reversed, concluding that each of the claims was a direct claim. Because we conclude that all the claims are derivative and the minority shareholders failed to follow the requirements of Minn. R. Civ. P. 23.06, we reverse the court of appeals and reinstate the trial court's order dismissing the case without prejudice.

Archives Corporation (Archives) is a closely held Minnesota corporation. John D. Jerome (Jerome) is its founder and owned approximately 52% of its stock at the time this action was initiated. Sandra Jerome (S.Jerome) is Jerome's wife and an officer of Archives. Archives, Jerome, and S. Jerome will collectively be referred to herein as appellants. The Wessins, E.R. Salovich, and George O. Holm are some of the minority shareholders of Archives. There is no indication in the record that the parties at any time entered into a shareholder agreement.

In 1995, Holm, Salovich, and the Wessins initiated this lawsuit. One count in the complaint was pled on behalf of Holm and Salovich, and alleged breach of certain loan agreements that had been entered into upon Holm and Salovich lending money to Archives. These loan agreements, on which Jerome was a personal guarantor, set compensation limits on Jerome's salary. This claim was settled and dismissed with prejudice. Under the terms of the settlement, Archives acquired all of Holm's and Salovich's shares in Archives.

The Wessins continued to pursue relief on the four remaining claims: (1) Jerome engaged in common law fraud and misrepresentation; (2) the appellants engaged in statutory fraud and misrepresentation in violation of Minn.Stat. § 302A.751, subd. 1(b)(2) (1998); (3) the appellants engaged in unfair prejudice to minority shareholders in violation of Minn. Stat. § 302A.751, subd 1(b)(3); and (4) the Jeromes engaged in common law breach of fiduciary duties owed to minority shareholders. These counts are summarized as follows.

In Count I, common law fraud and misrepresentation against Jerome, and Count II, statutory fraud and misrepresentation against the appellants, the Wessins assert that the appellants misrepresented:

(a) the nature and extent of compensation [Jerome] was actually receiving, both directly and indirectly from Archives, in direct violation of the Loan Agreement * * *; (b) the correct net income of Archives; (c) the payment of dividends to [Jerome], both directly from Archives and through the use of subsidiary corporations, which were not received by other shareholders; (d) the reimbursement of personal expenses by Archives to [the Jeromes] which were unrelated to [the] business of Archives; and (e) the financial status of Archives resulting from [Jerome's] misuse and misappropriation of funds from said corporation.

The Wessins assert that these misrepresentations were made with the intent to induce the Wessins "to not seek dividend compensation or otherwise seek further information relating to the misuse and misappropriation of funds from the company, and did, in fact, induce such actions and inaction." The Wessins sought money damages under Count I and equitable relief pursuant to Minn.Stat. § 302A.751, subd. 1(b)(2) under Count II.

In Count III, titled unfair prejudice, the Wessins reallege the prior allegations of the complaint, and assert that the appellants unfairly prejudiced the Wessins in violation of Minn.Stat. § 302A.751, subd. 1(b)(3). Under this count, the Wessins requested equitable relief pursuant to Minn.Stat. § 302A.751, subd. 1(b)(3).

Count IV alleges breach of fiduciary duties owed to the minority shareholders by the

Jeromes. The Wessins allege that the Jeromes:

> breached their fiduciary duties by committing fraud, mismanagement and waste of the corporate assets, and furthering their interests at the sacrifice of the best interests of the shareholders, by actions which include * * *: (a) requiring the corporation to pay personal debts; (b) diverting corporate assets to personal use * * *; and (c) paying themselves concealed and unearned compensation, both directly and through the use of subsidiary corporations.

> Defendant J. Jerome's breach of his fiduciary duties included, but was not limited to: (a) breach of his duty to avoid conflict of interests and to deal fairly and in a good faith with the shareholders, including Plaintiffs; (b) self dealing; and (c) acting as a creditor to the corporation and shareholder, officer, and director.

The Wessins sought money damages under Count IV.

It is undisputed that the Wessins did not follow the requirements of Minn. R. Civ. P. 23.06, which governs derivative actions. The complaint did not contain any allegations of the efforts made by the Wessins to obtain the desired action from Archives' directors or shareholders, or the reasons for the Wessins' failure to make such an effort.

In 1997, the appellants moved the trial court for dismissal or, alternatively, judgment on the pleadings, based on failure to state a claim. The appellants argued that all of the Wessins' claims were derivative and should be dismissed because they were pled directly and not on behalf of the corporation pursuant to Minn. R. Civ. P. 23.06. The Wessins requested permission to amend their complaint a second time if the court concluded that the Wessins' claims should have been asserted derivatively. The Wessins did not serve a proposed amended complaint with this request.

After excluding an affidavit submitted by the appellants in support of the motion as being outside of the pleadings, the trial court granted appellants' motion for judgment on the pleadings. The trial court determined that each of the Wessins' claims asserted a harm to the corporation, rather than direct harm to the Wessins, and that the Wessins could prove no set of facts consistent with the complaint that would entitle them to direct relief. In arriving at this decision, the trial court concluded that Minnesota does not recognize an exception to the derivative action pleading requirements for closely held corporations. The trial court specifically dismissed each claim without prejudice.

The trial court did not rule on the Wessins' motion to amend their complaint. The Wessins moved the trial court to vacate the judgment and for leave to amend their complaint, and the trial court denied that motion. The Wessins appealed.

The court of appeals reversed the trial court, concluding that each of the Wessins' claims was a direct claim. *Wessin v. Archives Corp.*, 581 N.W.2d 380, 385–86 (Minn. App.1998). The court of appeals determined that the fraud and misrepresentation claims of Counts I and II were direct claims given "Archives' size and character and the alleged wrongdoer's pivotal role in the corporation." *Id.* at 385.

As to the breach of fiduciary duty claim, the court of appeals concluded that because the appellants owed a fiduciary duty directly to the Wessins, as minority shareholders, the Wessins could assert a direct claim. *Id.* at 386. Finally, as to the claim of unfair prejudice, the court of appeals held that such a claim "is by its nature ordinarily a direct claim." *Id.*

The court of appeals next discussed the legislative history of Minn.Stat. § 302A.751 and the distinctions between closely held corporations and larger publicly held corporations. *Id.* at 387–91. The court of appeals also noted that Minn. R. Civ. P. 23.06 applies only to "derivative actions," and stated that "[a]n action that involves both direct claims and derivative claims would, strictly speaking, not be a derivative action." *Id.* at 390. Accordingly, the court of appeals held that the derivative pleading requirements of Minn. R. Civ. P. 23.06 "should not apply to actions that combine direct and derivative claims" under Minn.Stat. § 302A.751, subd. 1(b). *Id.* at 391.

The appellants jointly petitioned this court for review of the court of appeals' decision. The appellants assert that the court of appeals erred in holding that the Wessins' claims are direct and in concluding that the derivative pleading requirements do not apply to derivative claims that overlap with direct claims brought pursuant to Minn.Stat. § 302A.751, subd. 1. The appellants also take issue with the trial court's dismissal without prejudice, and assert that the trial court was required as a matter of law to dismiss the claims with prejudice. The court of appeals did not address this issue given its rulings on the other issues. We reverse and remand to the trial court for reinstatement of the order dismissing the Wessins' claims without prejudice.

## I.

■ Minnesota Rule of Civil Procedure 23.06 governs derivative actions brought by a shareholder to enforce the rights of a corporation. Rule 23.06 provides:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation * * *, the corporation * * * having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder * * * at the time of the transaction of which the plaintiff complains * * *. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders * * *, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

*Id.*

■ In determining whether a claim is direct or derivative, we have focused the inquiry to whether the complained-of injury was an injury to the shareholder directly, or to the corporation. *See Seitz v. Michel,* 148 Minn. 80, 87, 181 N.W. 102, 105 (1921). Where the injury is to the corporation, and only indirectly harms the shareholder, the claim must be pursued as a derivative claim. *See id.*

In *Seitz,* we clarified the importance of bringing a derivative action when pursuing the rights of a corporation. 148 Minn. at 87, 181 N.W. at 105. We emphasized that a derivative action was required because the funds to be recovered belong not to the shareholders individually, but to the corporation. *Id.* We stated:

> [t]he remedy for defendant's alleged diversion of corporate funds is not an individual action against him for the consequential damages. The wrongs complained of are wrongs against the corporation. The funds diverted should be restored to the corporation. The right of action is in them. * * * A minority stockholder may sue because the corporations are under the control of the alleged wrongdoers, but he must sue in a representative capacity for the benefit of the corporation, and not for damages to him individually. * * *
>
> The wrong is done when the funds are improperly expended. Such funds do not belong to the stockholders, but to the corporation.

*Id.* at 87, 181 N.W. at 105 (citation omitted).

■ Minnesota has long adhered to the general principle that an individual shareholder may not directly assert a cause of action that belongs to the corporation. *See, e.g., Singer v. Allied Factors, Inc.,* 216 Minn. 443, 446, 13 N.W.2d 378, 380 (1944). When a shareholder asserts a cause of action belonging to the corporation, the shareholder must seek redress in a " 'derivative' action on behalf of the corporation rather than in a direct action by the individual shareholder." *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche,* 535 N.W.2d 612, 617 (Minn.1995) (citation omitted).

■ In analyzing whether a claim is direct or derivative, we look not to the theory in which the claim is couched, but instead to the injury itself. *See id.* at 618 n. 6. The injuries alleged by the Wessins hinge on the waste and misappropriation of corporate assets. The Wessins assert that the alleged wrongful waste and misappropriation "effectively diminished the net income of Archives." Yet the Wessins also assert that they were *directly* injured by these improper actions of the appellants.

The Wessins cite *Northwest Racquet* in support of their assertion that all of their claims are direct, rather than derivative. In *Northwest Racquet,* one of the claims pursued by Northwest Racquet was a direct claim alleging that Deloitte & Touche, auditor for Midwest Federal Savings and Loan Association, had misrepresented in an audit report the value of certain of Midwest Federal's corporate debentures. 535 N.W.2d at 614–17. The claim alleged that Northwest Racquet specifically relied on these misrepresentations in deciding to purchase those debentures. *Id.* We held that Northwest Racquet's claims were direct because of the reliance on very specific incidences of misrepresentations that directly affected Northwest Racquet's decision to purchase the corporate debentures. *Id.* at 619.

The Wessins' claims vary significantly from those in *Northwest Racquet.* The Wessins' complaint does not contain any allegation of specific misrepresentation that directly harmed the Wessins. Unlike Northwest Racquet, the Wessins did not alter their position in direct reliance on appellants' misrepresentations. The crux of the Wessins' complaint is the alleged misappropriation and waste of corporate assets by the majority shareholder. These claims are traditional derivative claims that rightfully belong to the corporation. Any damage claimed by the Wessins arises only from their status as existing shareholders.

■ In asserting that their claims brought pursuant to Minn.Stat. § 302A.751, subd. 1(b)(2) and 1(b)(3) are direct claims, the Wessins argue that all claims brought under Minn.Stat. § 302A.751, subd. 1(b) are direct claims. However, this assertion ignores our prior precedent. *See PJ Acquisition Corp. v. Skoglund,* 453 N.W.2d 1 (Minn.1990). As the trial court stated, "the plaintiffs cannot defeat the traditional derivative claim analysis by simply seeking personal relief."

■ In *PJ Acquisition Corp.,* all of the plaintiff-shareholder's claims were pled derivatively, but the plaintiff-shareholder did not satisfy the contemporaneous ownership requirement of Minn. R. Civ. P. 23.06. 453 N.W.2d at 4–7. Furthermore, the plaintiff pled claims under Minn.Stat. § 302A.751, and asserted that those claims were direct and thus not subject to Rule 23.06. *Id.* at 6. We disagreed, and concluded that although Minn. Stat. § 302A.751 expanded equitable remedies available to shareholders, "the equitable remedy expanded does not replace the traditional derivative action." *Id.* We then stated, "when proper analysis of the complaint leads to the conclusion that, indeed, the action is derivative, the Rule 23.06 requirement must be met." *Id.* at 6 n. 12. We held that the plaintiff's claims were derivative and thus subject to the requirements of Rule 23.06. *Id.* at 6. In the instant case, even though the Wessins' claims specifically pled violations of Minn.Stat. § 302A.751, subds. 1(b)(2) and 1(b)(3), they are traditional derivative claims subject to the derivative pleading requirements of Rule 23.06.

This conclusion is not altered by the fact that the Wessins allege that some of the excess compensation paid to the Jeromes by Archives was in the form of actual or constructive dividends. Minnesota Statute § 302A.551, subd. 4 (1998) states that a corporation may pay dividends only if all shareholders of the class of stock on which a dividend is being paid receive the dividend. We have, in the past, allowed a direct action where a violation of this subdivision has occurred and *one* shareholder has been singled out to *not* receive the dividend. *See, e.g., Segerstrom v. Holland Piano Mfg. Co.,* 160 Minn. 95, 100, 199 N.W. 897, 899 (1924); *see also Murphy v. Country House, Inc.,* 349 N.W.2d 289, 292 (Minn.App.1984). However, the instant case differs fundamentally from one where a corporation paid all shareholders except one. The Wessins instead allege that as part of a pattern of wasting and misappropriating corporate assets, the Jeromes directed Archives to pay the Jeromes additional compensation in the form of dividends.

Furthermore, Minn.Stat. § 302A.557, subd. 1 (1998) states that, "[a] shareholder who receives a distribution made in violation of the provisions of section 302A.551 is liable *to the corporation,* * * * but only to the extent that the distribution received by the shareholder exceeded the amount that properly could have been paid under section

302A.551." (emphasis added). The Wessins' complaint alleges that the dividends paid to the Jeromes were part of a continuing improper scheme to waste and misappropriate funds, and as such were not properly payable. Accordingly, recovery of those improper "dividends" should be on behalf of the corporation. We hold that each of the Wessins' claims is derivative.

## II.

The Wessins argue that because Archives is a closely held corporation,[1] its minority shareholders should not be subject to the derivative pleading requirements of Minn. R. Civ. P. 23.06.

The Wessins urge us to adopt the American Law Institute's proposed rule that would allow a trial court to remove the direct-derivative distinction for closely held corporations. The ALI rule is as follows:

> In the case of a closely held corporation [ ], the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Principles of Corporate Governance* § 7.01(d) (A.L.I.1994). Courts have not widely embraced the ALI's proposed rule. *See, e.g., Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 384 (7th Cir.1990) (declining to adopt ALI rule); *Landstrom v. Shaver,* 561 N.W.2d 1, 14 (S.D.1997) (same); *but see Barth v. Barth,* 659 N.E.2d 559 (Ind. 1995) (adopting ALI approach).

■ The Wessins assert that in the context of a closely held corporation, a derivative action is futile because it returns the recovery to the corporation, which is still under the control of the majority shareholder-wrongdoer. However, that contention is not dispositive in determining whether a claim is direct or derivative. We hold that despite the smaller number of shareholders in a closely held corporation, such shareholders are still subject to the derivative pleading requirements of Minn. R. Civ. P. 23.06.

■ The Wessins argue that this court has acknowledged the distinct nature of a closely held corporation. It is true that in *Westland Capital Corp. v. Lucht Eng'g Inc.,* 308 N.W.2d 709 (Minn.1981), we mentioned that closely held corporations have been described as "partnership[s] in corporate guise." *Id.* at 712. However, in *Westland Capital,* we still concluded our analysis in terms of the corporation and its shareholders, thereby acknowledging that a closely held corporation is still a corporation with all of the rights and limitations proscribed by the legislature. On this point, we agree with the Seventh Circuit's statement:

> Corporations are *not* partnerships. Whether to incorporate entails a choice of many formalities. Commercial rules should be predictable; this objective is best served by treating corporations as what they are, allowing the investors and other participants to vary the rules by contract if they think deviations are warranted. * * *
>
> "[T]he closely held nature of the corporation [is] irrelevant to the distinction between direct and derivative actions."

*Bagdon,* 916 F.2d at 384 (citation omitted).

The purpose of Minn. R. Civ. P. 23.06 relates in large part to limiting recovery to the real party in interest. *See, e.g., Watson v. Button,* 235 F.2d 235, 237 (9th Cir.1956). The rule also helps to avoid multiple and conflicting suits, and protects corporate creditors. *See, e.g., id.* at 237; *Landstrom,* 561 N.W.2d at 14–15. A closely held corporation can have up to 35 shareholders. *See* Minn. Stat. § 302A.011, subd. 6a (1998). There is the possibility of multiple creditors and of numerous shareholder factions. A uniform, fair and predictable mechanism for enforcing claims of the corporation is important for the corporation and all of the shareholders. The

---

1. Minnesota Statutes section 302A.011, subd. 6a (1998) defines a closely held corporation as "a corporation which does not have more than 35 shareholders."

demand requirement of Minn. R. Civ. P. 23.06 is not onerous. The rule relates to enforcing "a right of a corporation," and simply requires particularity in the pleading relating to efforts the plaintiff extended to obtain the desired action from the directors or shareholders, or the reasons for the plaintiff's failure to make such efforts. Minn. R. Civ. P. 23.06. It thus provides flexibility, but encourages intra-corporation efforts and communication among the ownership or leadership group prior to involving the court system. Thus, we decline to adopt an approach that would eliminate the derivative pleading requirements as they apply to closely held corporations.

### III.

The Wessins also assert that the court of appeals properly held that the rule of Minn. R. Civ. P. 23.06, which requires a plaintiff to follow derivative pleading requirements "in a derivative action," does "not apply to actions that combine direct and derivative claims." *Wessin*, 581 N.W.2d at 391.

In its holding, the court of appeals stated that "[a]n action that involved both direct claims and derivative claims [is], strictly speaking, not [ ] a derivative action." *Wessin*, 581 N.W.2d at 390. The court then held that, under this "admittedly * * * constrained reading" of Minn. R. Civ. P. 23.06, the Wessins were not required to follow the derivative pleading requirements because their complaint combined "overlapping" direct and derivative claims. *Id.* We decline to accept the court of appeals' interpretation of Minn. R. Civ. P. 23.06.

■■■ The court of appeals' holding effectively eliminated the derivative pleading requirement when a plaintiff-shareholder merely pleads one direct claim in addition to derivative claims. However, Rule 23.06 contains no such exception. We hold that when a plaintiff-shareholder alleges both direct and derivative claims in a single cause of action, the pleading requirements of Minn. R. Civ. P. 23.06 must still be followed for all of the derivative claims or causes of action asserted therein.

### IV.

■■■ The trial court, after careful consideration, expressly dismissed each claim for failure to follow the derivative pleading requirements of Minn. R. Civ. P. 23.06. The trial court's dismissal was pursuant to Minn. R. Civ. P. 12.03, which allows any party to move for judgment on the pleadings. In the instant case, the trial court specifically excluded all matters outside the pleadings. Thus, the trial court was not required to treat the motion as one for summary judgment, and did not err in treating the motion as one for judgment on the pleadings pursuant to Minn. R. Civ. P. 12.03.

■■■ The trial court's order of dismissal expressly stated that each claim was dismissed without prejudice. The appellants now assert that, as a matter of law, the dismissal should have been with prejudice. "Whether a dismissal without prejudice will be granted, and on what terms, is a matter to be presented on motion to the trial court, which then must weigh the reasons given for the requested nonsuit against any prejudice to the other litigants." *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 426 (Minn.1987). Furthermore, "the law favors cases being decided on their true merits," and thus a dismissal without prejudice may be preferable to a dismissal with prejudice where the dismissal is based on failure to follow pleading requirements. *Id.*

This case had not proceeded to a point where a determination on the merits of the underlying causes of action was appropriate. Therefore, we hold that the trial court did not abuse its discretion in determining that dismissal without prejudice was appropriate.

### V.

In response to the appellants' motion for dismissal, the Wessins requested permission to amend their complaint a second time in order to restate their claims as derivative claims. The Wessins sought permission to amend only if the trial court ruled in favor of the appellants' motion. The trial court ruled in favor of appellants and denied the Wessins' motion to amend their complaint. In their brief to this court the Wessins assert

that the trial court erred in denying them leave to amend their complaint.

■ Minnesota Rule of Civil Procedure 15.01 provides that after a responsive pleading has been served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The decision to allow a party to amend its complaint after responsive pleading has been made lies within the sound discretion of the trial court. *See Transamerica Ins. Co. v. F.D.I.C.*, 489 N.W.2d 224, 229 n. 8 (Minn. 1992).

■ In this case, the trial court dismissed each of the Wessins' claims without prejudice. Thus, the Wessins may initiate properly pled derivative claims. Accordingly, we hold that the trial court did not abuse its discretion in refusing to grant the Wessins leave to amend their complaint more than 2 years after this action was first initiated.

We therefore reverse and remand this case for reinstatement of the trial court's judgment.

Reversed and remanded.