**William ABBOTT, individually and derivatively on behalf of SarTec Corporation, Plaintiff,**

v.

**Larry McNEFF, an individual, and, SarTec Corporation, Defendants.**

**No. 99–1402(DWF/AJB).**

United States District Court, D. Minnesota.

May 2, 2001.

---

Marshall H. Tanick, and Brian Docken-dorf, Mansfield, Tanick & Cohen, Minne-apolis, Minnesota, on behalf of Plaintiff.

Lindsay G. Arthur, Jr., and Lisa M. Bilcik, Arthur, Chapman, Kettering, Sme-tak & Pikala, Minneapolis, Minnesota, on behalf of Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendants' Motion for Partial Summary Judgment. In the complaint, Plaintiff has asserted claims, on his own behalf and on behalf of SarTec, against Defendants McNeff and SarTec. Plaintiff asserts a variety of claims including: breach of contract, non-payment of dividends, violation of his rights as a minority shareholder under the Business Corporation Act (Minn.Stat. § 302A.751), unjust enrichment, common law breach of fiduciary duty, and two claims related to a partnership (MA Properties) that owns the land on which SarTec is located. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### Background

■ Plaintiff William Abbott (Abbott) contends that he was approached by Defendant Larry McNeff (McNeff) in 1984 and was asked to guarantee a loan for SarTec Corporation (SarTec).[1] The loan guarantee totaled about $65,000, and Abbott was told that for guaranteeing the loan he would receive a 30% share in Sar-Tec. A letter outlining this agreement was sent by McNeff to Abbott on September 7, 1985. Abbott and McNeff have previously and continue to co-own a number of business entities including a busi-

---

1. For the purposes of these motions, the Court has drawn the facts from Plaintiff's complaint and supporting materials and must view the evidence and inferences in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8 th Cir.1996).

ness called MA Properties. The parties are also brothers-in-law.

Abbott agreed to guarantee the loan, so that McNeff could buy out his previous partner in SarTec, David Greer. The loan papers were signed by McNeff and directed to a bank in Minnesota. Further evidence of the transaction exists in the form of a certified document signed by McNeff, as President of SarTec, that states that Abbott and Abbott's wife have owned 30% of SarTec since October 1, 1985.

In 1986, Abbott contends that the two parties had discussions regarding the possible sale of Abbott's share in SarTec to McNeff. Abbott states that McNeff had been trying to sell 30% of his own shares to an outside buyer and was asking $300,000. Abbott also contends that McNeff had listed the value of SarTec on bank loan applications at $300,000. Abbott told McNeff that, based on these factors, he would be willing to sell his shares to McNeff for $300,000. McNeff rejected Abbott's offer.

In the early 1990's, Abbott again discussed selling his shares to McNeff, but McNeff responded by telling Abbott that he would only recover his investment when the company was sold. However, McNeff also suggested that both parties obtain independent financial evaluations as to the value of the company. In 1994–1995, Abbott had an independent valuation of the company performed. Abbott had a second valuation performed in 1997.

In 1996, Abbott told McNeff that he wanted to take a more active role in SarTec. Abbott contends that he asked McNeff for a position with SarTec, but that his suggestion was summarily dismissed. Abbott and his wife sent a letter to McNeff and his wife dated March 22, 1996, asking that SarTec "have regular Officers, Directors, and Stockholder meeting [sic]." Around this time, Abbott contends that he also began to ask McNeff about taking part in company promotions. Abbott had been allowed to attend one of these company promotions in Las Vegas in the 1980s, but was not asked to take part in subsequent promotions in Las Vegas and Costa Rica.

Before Abbott became a shareholder in SarTec, he had an opportunity to review its financial records. Abbott also has acknowledged that he had access to its records in having his valuations of the company performed. In 1997, Abbott reviewed SarTec's financial records and discovered what he believed was a "substantial diversion of money from the company for McNeff's personal and familial use, including money spent for his son's wedding and honeymoon in Hawaii, personal haircuts and grooming, and similar personal expenses." Abbott further reviewed SarTec's financial records and created a list of the expenses, dating back to April 16, 1988, that he believed were or could be inappropriate.

After the parties were unable to resolve their differences, Abbott brought this suit, on his own behalf and on behalf of SarTec, against McNeff and SarTec. Abbott asserts a variety of claims including: breach of contract, non-payment of dividends, violation of his rights as a minority shareholder under the Business Corporation Act (Minn.Stat. § 302A.751), unjust enrichment, common law breach of fiduciary duty, and two claims related to a partnership (MA Properties) that owns the land on which SarTec is located.

Defendant brings this motion for partial summary judgment on the following grounds:

1) Defendant argues that the applicable statute of limitations on all of Plaintiff's misappropriation or corporate waste claims brought under Minn. Stat. § 302A.751, subd. 1(b)(2) and (b)(3) is six years and, therefore, all

claims arising before that period should be dismissed.

2) Defendant argues that all of Plaintiff's individual claims for monetary damages should be dismissed, because the claims are properly that of SarTec.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8 th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8 th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or details, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### 2. Issues

#### a. Statute of Limitations

Federal jurisdiction in this case is based on diversity, and as such, Minnesota's substantive law, including its statutes of limitations, applies. *Larsen v. Mayo Medical Center*, 218 F.3d 863, 866 (8th Cir. 2000) (citing *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Statutes of limitations exist to provide a defendant with "peace of mind"; they also "recogniz[e] that after a certain period of time it is unfair to require the defendant to attempt to piece together" a defense to an old claim. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980). Minnesota law provides that commencement of a civil action begins when the summons is served on the defendant. Minn. R. Civ. P. 3.01. The Record before the court in this matter indicates that this action was commenced pursuant to Minnesota Rule of Civil Procedure 3.01 on September 21, 1999.

Defendant brings this motion for partial summary judgment asserting that the applicable statute of limitations on all of Plaintiff's misappropriation or corporate waste claims brought under Minn.Stat. § 302A.751, subd. 1(b)(2) and (b)(3) is six years and, therefore, all claims arising before that period should be dismissed. Defendant argues that the six-year statute of limitations is applicable pursuant to Minnesota Statute § 541.05, subd. 1(1) & (2) which states in pertinent part that:

Subd. 1. Except where the Uniform Commercial Code otherwise prescribes, the following actions shall be commenced within six years:

(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;

(2) Upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07;

Minn.Stat. § 541.05, subd. 1(1) & (2).

■ This Court finds that the six-year statute of limitations prescribed in Minn. Stat. § 541.05, subd. 1(1) & (2) is applicable to Plaintiff's claims of corporate waste and misappropriation and does so relying on precedent established by the Supreme Court of Minnesota and past practice in this federal district.

The Supreme Court of Minnesota in *Anderson v. Anderson* implicitly recognized that the six-year statute of limitations is applicable to derivative breach of fiduciary duty claims. 293 Minn. 209, 197 N.W.2d 720, 726 (1972). In *Anderson*, a derivative suit was brought to rescind a sale of land. *Id.* at 721. The Court found that Minnesota Statute § 541.05 was applicable to the claims, but found that the statute of limitations had not run. In determining that the statute of limitations had not run, the court held that the claims did not accrue "until they [plaintiffs] became aware, or should have become aware by reasonable diligence, of the facts supporting the claim." *Id.* at 726.[2]

■ The record before this court shows that Abbott has had access to SarTec's financial records and has reviewed Sar-Tec's financial records on a number of occasions. Abbott admits to reviewing SarTec's financial records when he was initially approached about signing the loan guarantees. (William Abbott Dep. p. 14). Abbott also admits to having two independent valuations of the company performed in 1994 and in 1997. (Abbott Dep. p. 51–53, 59). Finally, Abbott requested that SarTec provide him with financial records prior to the commencement of this suit. (Abbott Dep. p. 79). Although he asserts certain documents were not made available to him, the sheer number of individual instances of corporate waste he alleges indicate that he has been provided with access to a great deal of those records requested, and he admits to having at least 1,000 documents in his possession. (Abbott Dep. pp. 81–82).

The record also indicates that Abbott has been suspicious of the way in which McNeff has managed SarTec's finances for a number of years. Abbott contends he has received little or no dividends from SarTec since he became a 30% owner in 1985. (Abbott Dep. pp. 34–35). Abbott has at various times allegedly requested profit information from McNeff, requested a job at SarTec, requested a more formal corporate structure, and spoken with SarTec's employees or former employees about alleged corporate waste. (Abbott Dep. pp. 105–106). Abbott's actions indicate that he was or should have been aware of the alleged corporate waste or misappropriation occurring at SarTec from a period very early in his association with the company.

In conclusion, this Court finds that the six-year statute of limitations prescribed in Minn.Stat. § 541.05, subd. 1(1) & (2) is applicable to Plaintiff's claims of corporate waste and misappropriation. This Court also finds that no genuine issue of material

---

**2.** Plaintiff urges the Court to find the continuing wrong doctrine applicable to this case. In supporting this assertion, Plaintiff cites cases drawn from foreign jurisdictions or cases from this jurisdiction that are readily distinguishable. This Court, therefore, rejects the continuing wrong doctrine's applicability to the case before it, finding that each of the alleged misappropriations and wasteful events constitutes a distinct action to which the statute of limitations should be applied.

fact exists as to when Plaintiff became aware or should have become aware of the alleged corporate waste and misappropriation. This Court, therefore, grants Defendant's motion for summary judgment in part and bars Plaintiff from raising claims of corporate waste or misappropriation that arose more than six years before the filing of this lawsuit.

### b. Individual Claims for Damages

▮▮▮▮ Under Minnesota law, an individual shareholder generally may not assert a cause of action that belongs to the corporation. *Arent v. Distribution Sciences, Inc.,* 975 F.2d 1370, 1372 (8th Cir.1992) (cited in *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche,* 535 N.W.2d 612, 617–18 n. 5 (Minn.1995)). To pursue a cause of action on behalf of a corporation, a shareholder must seek redress through a derivative action as opposed to a direct action. *Id.* at 617. In determining whether a claim belongs to the corporation or its shareholders, the inquiry focuses on "whether the complained-of injury was an injury to the shareholder directly, or to the corporation." *Wessin v. Archives Corp.,* 592 N.W.2d 460, 464 (Minn.1999) (citing *Seitz v. Michel,* 148 Minn. 80, 87, 181 N.W. 102, 105 (1921)).

In *Wessin v. Archives Corp.,* the Supreme Court of Minnesota addressed a case very similar to the one before this Court. 592 N.W.2d 460 (Minn.1999). In *Wessin,* the plaintiffs, minority shareholders in a closely-held corporation, pursued relief under a number of legal theories. *Id.* at 462. The court considered these theories ultimately concluding that "[t]he injuries alleged by the Wessins hinge on the waste and misappropriation of corporate assets," and that as such, each of the theories of relief pursued were properly that of the corporation. *Id.* at 464. Based on its findings and consideration of other issues, the supreme court reinstated the trial court's dismissal of the Wessins' claims without prejudice. *Id.* at 468.

In his complaint, Plaintiff seeks recovery under a variety of legal theories both as an individual and on behalf of SarTec. Counts I, II, VII and VIII of Plaintiff's complaint seek relief directly for Plaintiff. Counts III, IV, V, and VI of the complaint seek relief on behalf of both Abbott and SarTec. Defendant McNeff brings this motion for partial summary judgment to dismiss claims that have been brought as direct claims by Plaintiff Abbott, but which properly belong to SarTec. Both parties focus their arguments on this issue with respect to claims brought under the Business Corporation Act, however, several of Plaintiff Abbott's individual claims do not purport to fall under this Act. Nonetheless, the Court finds that it has sufficient information to address each of the counts in the complaint as they are affected by this issue.

▮▮▮▮ In Counts I and II of his complaint, Abbott requests relief for breach of contract and failure to pay dividends subject to that contract. In *Wessin,* the Supreme Court of Minnesota considered claims similar to those made by the Plaintiff here. Like the court in *Wessin,* this Court finds that the various injuries alleged by the Plaintiff in this case hinge on his allegations of corporate waste and misappropriation. *Wessin,* 592 N.W.2d at 464. As a result, this Court agrees with Defendants that Counts I and II were properly that of the company and as such should be dismissed without prejudice.

▮▮▮▮ Counts VII and VIII have been brought by Plaintiff as direct actions with respect to M.A. Properties, a joint partnership held by Abbott and McNeff. In general, a claim for damages due to the conversion, misappropriation, or waste of partnership property must be brought in the context of an action for an accounting.

*See Jacobs v. Jacobs,* 227 Minn. 451, 35 N.W.2d 611 (1949). The Court is unaware of any such accounting action being brought here or before any other court with respect to the underlying facts of this case. Moreover, even if the Court were to consider Plaintiffs' partnership claims in light of Defendants' current motion, the Court would find Counts VII and VIII to be claims more appropriately those of the corporation. In *Buckley v. Control Data Corp.,* 923 F.2d 96 (8th Cir.1991), a *Wessin*-like analysis was applied to claims against a partnership, and they were determined to be derivative claims given the lack of "any individualized harm that is separate and distinct from the harm done to the limited partnership." *Id.* at 98 (citing *Buckley v. Control Data Corp.,* No. 3–88–698, slip op. at 13–14 (D. Minn. June 2, 1989)). This Court agrees with the analysis implemented in *Buckley,* and finds that Counts VII and VIII are derivative rather than direct actions. Accordingly, the Court dismisses Counts VII and VIII without prejudice.

 Counts III, IV, V, and VI respectively allege claims of conversion, misappropriation and waste under the Business Corporation Act, unjust enrichment, and breach of common law fiduciary duty. With respect to Counts III, IV, V, and VI, Plaintiff has characterized each claim as both a direct and derivative action. To the extent that each of Counts III through VI is brought as an individual action for damages, the court dismisses each count without prejudice. Simply characterizing the claims as direct and individual does not negate the common basis of alleged corporate waste and misappropriation which, as the Court has previously discussed, renders such claims to be derivative. To the extent that each of Counts III through VI is brought as a derivative action, the Court retains jurisdiction over each Count. The fact that Plaintiff Abbott may ultimately become eligible for monetary relief in the form of a mandatory buyout under the Business Corporation Act does not necessarily render related claims to be direct. Ultimately, all of Plaintiff's claims allege corporate waste and mismanagement on behalf of the corporation, and thus provide a right of action to the corporation, not the individual. *Westgor v. Grimm,* 318 N.W.2d 56, 58 (Minn.1982). Should such claims be successful, the corporation will benefit, and any benefit to Abbott will be indirect as a shareholder of a company made stronger by the success of litigation.

For the reasons stated, **LET IT BE ORDERED THAT:**

1. Defendants' Motion for Partial Summary Judgment (Doc. No. 36) is **GRANTED** such that:

a. Counts are I, II, VII, and VIII are **DISMISSED WITHOUT PREJUDICE;**

b. Counts III, IV, V, and VI are **DISMISSED WITHOUT PREJUDICE** to the extent that they represent individual claims for monetary damages, but the Court retains jurisdiction to the extent that Counts III, IV, V, and VI represent derivative actions; and,

c. All claims relating to events occurring before September 21, 1993 are **DISMISSED WITH PREJUDICE.**