*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0858**

In re Medtronic, Inc. Shareholder Litigation.

**Filed January 25, 2016
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Hennepin County District Court
File No. 27CV1411452

Vernon J. Vander Weide, Gregg M. Fishbein, Richard A. Lockridge, Lockridge, Grindal, Nauen, P.L.L.P., Minneapolis, Minnesota; and

Mark C. Gardy, James S. Notis, Jennifer Sarnelli, Gardy & Notis, LLP, New York, New York; and

Emily Komlossy, Ross Appel, Komlossy Law, P.A., Hollywood, Florida (for appellant)

James K. Langdon, Michelle S. Grant, James K. Nichols, Dorsey & Whitney, LLP, Minneapolis, Minnesota (for respondents)

Considered and decided by Peterson, Presiding Judge; Halbrooks, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Appellant challenges the district court's dismissal of his class-action suit against respondents arising out of respondent Medtronic, Inc.'s acquisition of an Irish corporation through an inversion, asserting that the inversion caused him to incur significant capital-gains taxes and diluted his corporate ownership. Appellant argues that

the district court erred by (1) dismissing ten of his claims as derivative and for failing to comply with Minn. R. Civ. P. 23.09 and (2) dismissing two of his claims for failure to state a claim under Minn. R. Civ. P. 12.02(e).  We affirm in part, reverse in part, and remand.

## FACTS

Appellant has pleaded the following facts relevant to the appeal.  On March 25, 2014, José É. Alméida, the chief executive officer of Covidien (an Irish public limited company), contacted Omár Ishrak, the chief executive officer of respondent Medtronic, Inc. (at the time, a Minnesota public company), to set up an in-person meeting to discuss a potential merger between the two companies.  Following that meeting, the parties discussed potential merger options, including Medtronic acquiring Covidien through an "inversion."

In an inversion transaction, Medtronic would no longer be a Minnesota-based company but would be incorporated in Ireland (New Medtronic).  As a result, Medtronic's future foreign earnings would not be subject to U.S. federal income taxes. In order to recover some of the future lost federal-income-tax revenue, the Internal Revenue Service (IRS) imposes an excise tax (or capital-gains tax) on any shares held in taxable accounts by a company's shareholders.[1]  According to Medtronic's Form S-4, neither Medtronic nor Covidien would be subject to this excise tax ("None of Covidien or

_____

[1] *See* I.R.C. Code § 7874 (2014) (addressing tax on inversion gain of expatriated entities); *see also* I.R.C. § 4985 (2014) (providing that a 15% excise tax is imposed on the value of stock compensation in 2014).  Congress imposed this tax to discourage inversion transactions.

2

New Medtronic are expected to be subject to U.S. federal income tax as a result of the merger or the scheme."). And, in order to avoid violating IRS regulations, all Medtronic shareholders would incur a significant dilution in their shares that would not have been required in a non-inversion transaction.

Respondent Medtronic board of directors,[2] spoke with Covidien via teleconference in May 2014 to further discuss the potential inversion, Medtronic's foreign-cash reserves, Covidien's financial value, Covidien's potential tax-free access to their overseas cash, and the impact of the merger. Notably, as part of the inversion proposal, Medtronic would provide its senior executives and the Individual Respondents a gross-up payment or "Excise Tax Reimbursement" of more than $60 million to compensate them for the excise tax they would incur as shareholders due to the inversion. No other Medtronic shareholders would receive this Excise Tax Reimbursement. Finally, Medtronic agreed to pay Covidien $850 million if the Medtronic shareholders did not ratify the inversion transaction.

At the end of May 2014, Medtronic and Covidien negotiated the purchase price of Covidien, and on June 2, 2014, the Medtronic CEO and the Covidien CEO "reached a nonbinding oral understanding" to purchase Covidien at $92.50 per share. The next day, the Medtronic Board and Covidien approved the transaction to purchase Covidien at $92.50 per share. On June 15, 2014, Medtronic announced the inversion, by which

---

[2] The Medtronic board of directors is composed of individual respondents Ishrak, Anderson, Donnelly, Dzau, Jackson, Leavitt, Lenehan, O'Leary, Powell, Pozen, and Reddy (Individual Respondents or the Medtronic Board).

3

Medtronic would acquire Covidien. On that same day, Perella Weinberg Partners LP, an independent advisory and asset-management firm, provided an opinion to the Medtronic Board, and they opined that the consideration Medtronic would pay was fair to Medtronic and to its shareholders. Accordingly, the Medtronic Board approved the inversion.

On July 2, 2014, appellant Lewis Merenstein filed a class-action suit against respondents. Appellant challenges "the decision to structure the acquisition as an inversion[, which] caused harm, both as to the [excise] taxes he is being forced to pay and as to that part of the dilution [in his corporate ownership] attributable to the need to comply with the IRS's anti-inversion regulations." On September 26, 2014, the district court granted an order consolidating appellant's action with another shareholder's later-filed action.

The complaint alleges the following counts. Appellant alleges harm to him and Medtronic's shareholders by the Individual Respondents for self-dealing (count I), breach of fiduciary duties (count II), and breaches of the standard of conduct for both officers and directors pursuant to Minn. Stat. §§ 302A.251, .361 (2014) (counts III and IV). Count V seeks equitable relief pursuant to Minn. Stat. § 302A.467 for each of these breaches. Counts VI and VIII-X allege harm based on violations of Minn. Stat. § 302A.255 (2014) (count VI), §§ 302A.165, .251, .255, .521 (2014) (count VIII), §§ 302A.011, subd. 10, .551, .557, .559 (2014) (count IX), and § 302A.165 (count X). Count VII alleges harm based on Minn. Stat. § 302A.521. Counts XI and XII allege harm based on violations of Minn. Stat. §§ 80A.68, .76 (2014) (count XI), and §§ 80A.69, .76 (2014) (count XII).

Respondents moved for dismissal pursuant to Minn. R. Civ. P. 23.09 and Minn. R. Civ. P. 12.02(e), asserting that all the counts are derivative. The district court granted respondents' motion to dismiss on March 20, 2015, concluding that counts I-X are derivative claims and that appellant failed to follow the procedures mandated by rule 23.09.[3] The district court further concluded that, although counts XI and XII were direct claims, appellant failed to state a claim for relief pursuant to rule 12.02(e). This appeal follows.

## D E C I S I O N

Appellant challenges the district court's conclusions that counts I-X are derivative and therefore subject to rule 23.09 and that counts XI-XII fail to state a claim under rule 12.02(e). Appellant also argues that the district court mischaracterized and contradicted certain allegations and failed to credit certain other factual allegations. After carefully reviewing each count, we conclude that the district court erred in determining that counts I-VI and VIII-X are derivative and subject to rule 23.09. We agree with the district court that count VII is derivative and subject to dismissal. We agree with the district court that counts XI and XII are direct but conclude that appellant stated a claim for relief with respect to count XI. We therefore affirm in part, reverse in part, and remand.

---

[3] Respondents moved for dismissal on two grounds, arguing that counts I-X were derivative and therefore subject to rule 23.09 and that the counts failed to state a claim under rule 12.02(e). But the district court only concluded that counts I-X were derivative and thus subject to rule 23.09. The parties did not request that this court determine whether counts I-X were sufficiently pleaded under rule 12.02(e) on the merits, and the district court similarly did not make these conclusions for counts I-X. Therefore, we only reach a decision on whether counts I-X are direct or derivative claims.

## I. Dismissal of counts I-X as derivative claims

### A. Direct vs. derivative claims

Under Minnesota law, a shareholder can file a direct or derivative claim against a corporation. *Wessin v. Archives Corp.*, 592 N.W.2d 460, 467 (Minn. 1999). If a claim is determined to be derivative, then it is subject to the procedures of rule 23.09.[4] When a shareholder alleges both direct and derivative claims in a single cause of action, he or she must comply with rule 23.09 only with respect to the derivative claims. *Wessin*, 592 N.W.2d at 467. When the corporation itself is injured, yet the shareholder is only indirectly harmed, the claim must be litigated as a derivative claim. *Stocke v. Berryman*, 632 N.W.2d 242, 247 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001).

In order to pursue a direct claim, a shareholder must be able to "allege some injury or harm that is separate and distinct from the injury or harm to the corporation and that is not dependent on the harm to the corporation." *Id*. The court must focus its inquiry on the alleged injury when deciding whether a claim is direct or derivative. *Wessin*, 592 N.W.2d at 464. But, a shareholder may not bring a direct suit where the cause of action belongs to the corporation. *Stocke*, 632 N.W.2d at 247. "A district court's decision as to

---

[4] Under Minn. R. Civ. P. 23.09, (1) the plaintiff must be a shareholder at the time of the injury and must continuously remain a shareholder throughout the suit; (2) the complaint must allege the efforts, if any, of the shareholder in making a demand on the board to resolve the suit; and (3) if no demand was made on the board, the shareholder must provide the reason why he or she failed to make a demand or why making demand on the board was futile.

whether a claim is direct or derivative is subject to a [de novo] standard of appellate review." *Blohm v. Kelly*, 765 N.W.2d 147, 153 (Minn. App. 2009).

Much of the parties' dispute over whether the claims are direct or derivative in this case hinges on whether a claim can be direct if it injures all shareholders. Because Minnesota appellate courts infrequently review shareholder derivative actions, we turn to Delaware law. *See Prof'l Mgmt. Assocs., Inc. v. Coss*, 598 N.W.2d 406, 412 (Minn. App. 1999), *review denied* (Minn. Nov. 23, 1999). Therefore, we turn to a recent Delaware Supreme Court decision that is on point. In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, the Delaware Supreme Court distinguished between a stockholder's derivative or direct claim based on whether all the stockholders or the corporation suffered the alleged harm directly and received the benefit of the recovery or remedy. 845 A.2d 1031, 1035 (Del. 2004). Acknowledging confusion caused by language in its earlier decisions, the court unequivocally held that "a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on *all stockholders equally*, without the claim thereby becoming a derivative claim." *Id.* at 1037. (emphasis added). Therefore, under *Tooley,* a stockholder may bring a direct claim even if all shareholders are similarly injured and received the benefit of the recovery, so long as the injury is not suffered by the corporation. *Id.*

The *Tooley* court's analysis is consistent with the purpose of the shareholder-derivative rule, which is based on the standing and real-party-in-interest doctrine that preserves the corporation's claims to itself. It is also consistent with subsequent Minnesota case law. *See Blohm*, 765, N.W.2d at 153 (framing the inquiry as "whether

the complained-of injury was an injury to the shareholder directly, or to the corporation"); *Stocke*, 632 N.W.2d at 247 (stating that a shareholder must allege "some injury or harm that is separate and distinct from the injury or harm to the corporation and that is not dependent on the harm to the corporation.)" *review denied* (Minn. Oct. 21, 1987). And it would be illogical to preclude a shareholder from pursuing a claim that the corporation could not itself pursue because it was not injured. *See, e.g., Strougo v. Bassini*, 282 F.3d 162, 172 (2d Cir. 2002) ("An inquiry that asks only whether shareholders have suffered 'undifferentiated harm,' rather than whether the shareholders have suffered injury distinct from any potential injury to the corporation, could lead to situations in which shareholders are improperly left with an injury without legal recourse."). Accordingly, we conclude that all shareholders may bring a direct claim if (1) all shareholders share the same injury; (2) the shareholders would receive the benefit of the recovery or remedy; and (3) the injury is not suffered by the corporation.

### B.    Appellant's claims

We next turn to appellant's specific arguments. Here, appellant argues that "the inversion was bad for *all* of Medtronic public shareholders" because the inversion diluted their corporate stock ownership." Because of the structure of the proposed transaction, appellant alleges that the Medtronic shareholders had little choice but to ratify the inversion to avoid the $850 million "payout." Appellant maintains that the remedy sought is on behalf of shareholders; it seeks relief *from* Medtronic and not on behalf of Medtronic. Appellant further alleges that the inversion was bad for the shareholders who

were "injured by a disloyal Board and for some Medtronic shareholders who, in addition to being diluted, are forced to pay capital gains taxes."

The district court determined that counts I-X were not direct claims but rather were derivative and subject to the procedural requirements in rule 23.09, and thus granted respondent's motion to dismiss. Appellant maintains counts I-X are direct and not subject to rule 23.09.

### 1. Counts I-VI and VIII-X

Appellant alleges that the inversion harmed Medtronic shareholders directly through involuntary capital-gains taxes and the dilution in their corporate stock ownership. He asserts that Medtronic was not injured by either the tax or dilution, but in fact benefited from the conduct that was injurious to shareholders. Appellant therefore asserts that these are direct claims not subject to the procedural requirements pursuant to rule 23.09, and the district court erred by determining that these counts were derivative claims subject to rule 23.09. We agree with respect to counts I-VI and VIII-X.

Appellant alleges harm to himself and Medtronic's shareholders by the Individual Respondents. Counts I-IV of the complaint allege that appellant and the shareholders were harmed directly by the inversion transaction approved by the Medtronic Board and entered into by Medtronic, which led to a dilution in the value of the shares of appellant and Medtronic shareholders in the company. Count V alleges that appellant and the shareholders are entitled to damages from respondents' self-dealing and breaches in counts I-IV. Finally, appellant alleges that only he and the Medtronic shareholders were harmed because only the shareholders will experience a dilution in shares, not Medtronic.

9

Appellant's claim is direct because, (1) it alleges harm suffered by appellant directly; (2) he is a shareholder who will receive the benefit of the recovery or remedy; and (3) the claim "does not depend on harm to the corporation." *Tooley*, 845 A.2d at 1037-38.

Counts VI and VIII-X allege harm based on the Excise Tax Reimbursement under the theories of public policy and preferential treatment. Counts VI and VIII-X also allege harm to appellant and certain shareholders in incurring the 15% excise tax pursuant to IRC § 4985 due to the inversion. Medtronic is not subject to this tax under the inversion structure and thus is not harmed. Further, the Individual Respondents along with certain senior executives received the Excise Tax Reimbursement, which compensates them for the excise tax on their shares and makes them whole. No other shareholders, including appellant, received this reimbursement. Finally, if appellant prevails, he will receive the benefit, not the corporation. Counts VI and VIII-X likewise meet the requirements under *Tooley* of harm and benefit of recovery to appellant and not to the corporation. *See* 845 A.2d at 1038.

Respondents argue that, if the impact on all shareholders is the same, then the claims must be derivative, relying on *Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617-18 (Minn. 1995) (citing *Seitz v. Michel*, 148 Minn. 474, 475, 181 N.W.2d 106, 106 (1921)). *Northwest Racquet* is distinguishable because in that case the debenture holders had alleged injuries separate and distinct from those injuries suffered by other debenture holders. *Id*. at 618. Thus, the supreme court did not have before it the issue we address here. Moreover, the Delaware Supreme Court unequivocally held that "a direct, individual claim of stockholders that does not

10

depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim." *Tooley*, 845 A.2d at 1037.[5]

Moreover, certain shareholders, including appellant, suffered harm different than other shareholders. As previously mentioned, the Individual Respondents received the Excise Tax Reimbursement to compensate them for the 15% excise tax. Other shareholders must pay this tax without any compensation from Medtronic. Respondents concede that, if the injury is separate and distinct from an impact on shareholders as a whole, the claim is direct.[6] *See Nw. Racquet*, 535 N.W.2d at 617-18. This further supports the conclusion that counts VI and VIII-X are direct claims.

### 2. Count VII

In count VII, appellant alleges that the financial indemnification to the Individual Respondents through the Excise Tax Reimbursement is void or voidable because they violated Minn. Stat. § 302A.521.[7] This is a harm that belongs to the corporation because voiding the Excise Tax Reimbursement would result in a return of funds to the

---

[5] Respondents' argument falls prey to the logical fallacy identified by Daniel Kleinberger. "[A]s a matter of consequence when a shareholder's injury is indirect, all shareholders have in common the same (indirect) injury. It does not logically follow, however, that whenever shareholders have a common injury they necessarily suffered their injury indirectly." Daniel S. Kleinberger, *Direct versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 103 (Winter 2006).

[6] Respondents make various arguments that appellants' claims are derivative because the harm they complain of is actually due to corporate waste. *See Wessin*, 592 N.W.2d at 464-66. However, with the exception of count VII, appellant's arguments are not based on corporate waste.

[7] The facts underlying this claim may be related to other claims that have not been dismissed as to the Individual Respondents' fiduciary duties. We do not reach a decision on the merits whether the Individual Respondents breached their fiduciary duties.

11

corporation. *See Wessin*, 592 N.W.2d at 464; *Tooley*, 845 A.2d at 1038. Appellant did not follow the procedures under rule 23.09. Therefore, the district court did not err in determining that count VII as pleaded is a derivative claim subject to dismissal under rule 23.09.

**II.     Dismissal of counts XI and XII under rule 12.02(e)**

When a case is dismissed pursuant to rule 12.02(e) for failure to state a claim for which relief can be granted, we "review de novo whether a complaint sets forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank, N.A*, 851 N.W.2d 598, 606 (Minn. 2014) (citation omitted). Minn. R. Civ. P. 8.01 provides that a complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." A claim is sufficient to survive a motion to dismiss "if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963); *accord Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010).

The district court concluded that counts XI-XII, although direct, were "ripe for dismissal" because (1) the counts failed to allege that Medtronic made "false or misleading statements," (2) appellant was not "entitled to the omitted information," and (3) respondents did not provide fraudulent financial advice to appellant. In determining that the claims were direct, the district court followed *Blohm v. Kelly*, in which this court concluded that "the right of access to corporate records is personal to each shareholder."

12

765 N.W.2d at 157. Similarly here, respondents were required under 17 C.F.R. § 240.14a-9(a) (2014), Minn. Stat. §§ 80A.68, .69, and 302A.463 to provide information regarding the inversion to appellants. Respondents do not dispute the district court's determination that the counts are direct claims, and we agree. On count XI, we disagree with the conclusion that appellant did not sufficiently plead the count to overcome rule 12.02(e). On count XII, we reverse and remand for a determination of whether the count is sufficiently pleaded. We address each in turn.

## A. Count XI

Under Minn. Stat. § 80A.68 a claim may be brought against a person who "in connection with the offer, sale, or purchase of a security, directly or indirectly" (1) employs a device to defraud; (2) makes untrue statements of material fact or omits material facts that makes statements made misleading; or (3) engages in an act that operates as a fraud or deceit.

To determine whether an alleged misrepresentation or omission is material, Minnesota courts rely on federal securities law. "To be actionable under the federal securities laws, misrepresentations or omissions must be material." *Rodney v. KPMG Peat Marwick*, 143 F.3d 1140, 1143-44 (8th Cir. 1998). In the context of a proxy statement "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S. Ct. 978, 980 (1988) (citing *TSC Indus., Inc. v. Northway*, *Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132 (1976)).

In certain cases, materiality may be decided as a matter of law, *see Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), but "[t]he [materiality] determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to [the shareholder]," *TSC Indus., Inc.*, 426 U.S. at 450, 96 S. Ct. 2126 at 2133. Thus, materiality is a "mixed question of law and fact," and, because the determination of materiality involves fact-specific inferences about what a reasonable shareholder would do, it is generally not appropriate to resolve as a matter of law by summary judgment. *Id.* at 450, 96 S. Ct. at 2132-33; *see Rodney*, 143 F.3d at 1144 (concluding that materiality generally involves a factual question for the jury); *see also In re Cabletron Sys., Inc.*, 311 F.3d 11, 34 (1st Cir. 2002) (determining that the materiality of a statement or the omission of information is generally a question of fact for the jury rather than determined by the court on a motion to dismiss).

"[A]ccept[ing] the facts alleged in the complaint as true and constru[ing] all reasonable inferences in favor of the nonmoving party," *Walsh*, 851 N.W.2d at 606, appellant has sufficiently pleaded material misrepresentations and omitted statements. The S-4 states repeatedly that the transaction is fair to all shareholders. But appellant alleges the following: the inversion is not "fair" to all Medtronic shareholders who incurred a 15% excise tax because certain shareholders received an Excise Tax Reimbursement whereas others did not; that the tax consequences were material to the Individual Respondents, who took care to evade them, *see Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1330-31 (7th Cir. 1969) (concealing directors' conflict of

14

interest was a material omission); that the inversion's tax consequences were ignored by Perella Weinberg in rendering its fairness opinion; and that, the inversion resulted in dilution of share values to 70% of the original share value for Medtronic shareholders. Appellant's allegations in count XI are sufficient to survive the motion to dismiss because "it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *N. States Power Co.*, 265 Minn. at 395, 122 N.W.2d at 29; *see also Bahr*, 788 N.W.2d at 80. Appellant has sufficiently pleaded that the omissions and misleading statements in the disclosure were insufficient to explain the matter to be voted on. Therefore, the district court erred in dismissing count XI under rule 12.02(e) for failing to state a claim.

## B. Count XII

Appellant argues that the district court erred in dismissing its direct claim under Minn. Stat. § 80A.69(a) for failure to state a claim. Under that statute:

> It is unlawful for a person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports relating to securities:
> (1) to employ a device, scheme, or artifice to defraud another person; or
> (2) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

*Id.* The district court concluded that appellant's claim under section 80A.69 was without merit for failure to allege that the omitted information "caused other information in the S-

4 or [p]roxy to be false or misleading," or that appellant was entitled to this information. But a claim under section 80A.69 is based solely on fraud, not on omitted information or false or misleading information. *Cf.* Minn. Stat. § 80A.68 (defining the elements for a general fraud claim, which includes using false or misleading information or omitting material facts). Therefore, the district court erred in applying the standard applicable to a claim under section 80A.68.

In two footnotes in their reply brief, respondents argue that, this court could affirm the district court on alternative grounds. Respondents argue that appellant failed to plead fraud with the specificity required by Minn. R. Civ. P. 9.02, that a security-fraud claim has a heightened pleading requirement, and there is a scienter requirement of knowledge and intent. *See Merry v. Prestige Capital Mkts., Ltd.*, 944 F.Supp.2d 702, 709 (D. Minn. 2013) (applying heightened pleading standard to claims under the Minnesota Securities Act); *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) (dismissing fraud allegations under rule 12.02 where they did not meet the requirements of fraudulent misrepresentation); *see also Minneapolis Emps. Ret. Fund v. Allison-Williams Co.*, 519 N.W.2d 176, 180-81 (Minn. 1994) (addressing scienter requirement for broker-dealer unsuitability claim brought under the Minnesota Securities Act). Respondents also argue that they are not "a person that advises others for compensation . . . as to the value of securities or the advisability of investing in, purchasing, or selling securities. . . or that, for compensation, . . . promulgates analyses or reports relating to securities." Minn. Stat. § 80A.69(a).

16

These issues were not raised to or addressed by the district court, and we decline to address them in the first instance on appeal. On remand the district court shall determine whether appellant pleaded with particularity a claim consistent with the requirements of Minn. Stat. § 80A.69(a), Minn. R. Civ. P. 9.02, and Minn. R. Civ. P. 12.02(e). In sum, we affirm the dismissal of count VII and reverse on the remaining counts for proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**